GEORGE H. KLASING v. FRED SCHMITT CONTRACTING COMPANY, a Corporation, Appellant.—73 S. W. (2d) 1011.

Division One, July 17, 1934.

*Jones, Hocker, Sullivan, Gladney & Reeder* and *James C. Jones, Jr.,* for appellant.

*Dan Reardon, Mark D. Eagleton* and *Allen, Moser & Marsalek* for respondent.

724

FERGUSON, C.—Action for damages for personal injuries sustained by plaintiff while in the employ of defendant. The trial resulted in a verdict and judgment for plaintiff in the sum of $15,000 and defendant appeals. Appellant contends, that the Workmen's Compensation Act applies; that the Workmen's Compensation Commission alone, and not the circuit court, had jurisdiction of plaintiff's claim and that if it be held that the Workmen's Compensation Act does not apply the judgment is excessive.

The petition alleges, in substance, that the plaintiff, on December 27, 1927, while in the employ of the defendant as a bricklayer in the erection of a building at Ninth and Benton streets, in the city of St. Louis, Missouri, was injured as the result of a fall or collapse of a portion of a scaffold on which he was, at the time, working, due to the negligence and carelessness of the defendant in failing to properly secure or fasten the boards or flooring of the scaffold; and that "at and prior to the time of said injury plaintiff's average annual earnings exceeded $3600, as provided in Section 7 (Sec. 3305, R. S. 1929) of the Workmen's Compensation Act." The answer was a general denial coupled with an affirmative plea that at the time of plaintiff's injury, December 27, 1927, the Workmen's Compensation Law was in effect; that both the plaintiff and the defendant had elected to accept the provisions of the act and were operating under same at the time of the accident and that the Workmen's Compensation Commission and not the circuit court had jurisdiction of the controversy.

Plaintiff was a bricklayer and had worked at that trade for more than twenty years prior to the date of the injury. Defendant company was a building contractor and at the time of the accident was engaged in the construction of a filling station. Plaintiff was employed as one of the bricklayers. Defendant had erected scaffolds along the west wall for the use of plaintiff and the other bricklayers and as plaintiff "was getting off" the scaffold one of the floor boards

or planks "tipped" causing him to fall to the ground below, a distance of about five feet. The evidence was that it was customary to nail the floor boards of the scaffolds, and that proper construction so required, but the floor boards had not been nailed or otherwise fastened. The scaffolds had been erected by other employees of defendant, under the supervision of the defendant's foreman in charge of that particular job, and plaintiff had no part in the construction or erection thereof. Plaintiff did not return to work until about a week later when he was sent to another job where he worked a few days. However, and upon the advice of Mr. Schmitt, his employer, plaintiff consulted Dr. Babler some "four or five days" after the fall. The doctor found he had sustained a "double hernia" and about two weeks thereafter plaintiff went to a hospital for an operation. The operation was performed and he remained at the hospital about three weeks. He was away from work a total of fifteen weeks by reason of the injury, after which he returned to work and was able to do, and did, the same kind and character of work in which he had formerly engaged and at the same wages. He apparently does not claim that the injury caused any loss of wages other than for the fifteen-week period mentioned. He does claim that since the injury he has continued to suffer pain in the left shoulder and in the back.

Defendant was a major employer operating under the Workmen's Compensation Act and it is admitted that plaintiff had never rejected the act and, pursuant to Section 3300, had accepted same and therefore came under the provisions and requirements thereof unless, upon the facts, he was excluded from the operation of the act by subdivision (a) of Section 3305, which we shall presently set out. Defendant offered no evidence controverting plaintiff's evidence as to the manner in which he was injured and it is apparent that if the Workmen's Compensation Act applies plaintiff's injury was caused "by accident arising out of and in course of his employment" within the meaning of Section 3301. All references herein to sections of the Workmen's Compensation Act are to the numbers thereof in Revised Statutes 1929. But plaintiff contends that he was not an employee within the meaning of the Workmen's Compensation Law as the term "employee" is used therein and defined by subdivision (a) of Section 3305 which is as follows: "The word 'employee' as used in this chapter (Chapter 28, R. S. 1929) shall be construed to mean every person in the service of any employer . . . under any contract of hire, express or implied, oral or written . . . *but shall not include persons whose average annual earnings exceed three thousand six hundred dollars.*" (Italics ours.)

Plaintiff was injured December 27, 1927, and his earnings, by way of wages paid him by defendant company, during the year 1927 to the date of injury aggregated $3642.25 which is the basis for plaintiff's contention that, by virtue of the foregoing statutory provision,

he is excluded from the operation of the Workmen's Compensation Law and entitled to maintain this common-law action for damages. The number of men employed by defendant company varied being dependent on the volume of construction work for which the company was able to obtain contracts; the number so employed varied from "about sixty to about four hundred" but was "never less than sixty." Likewise the hours, work time, or term of employment was uncertain and indefinite. Sixteen or seventeen years before the date of this injury plaintiff applied to Mr. Schmitt for work as a bricklayer and was given work by the defendant in that capacity. He worked at such construction jobs as the company, from time to time, obtained and was paid by the hour for the time he worked on the various assignments. It seems during this period plaintiff also worked for other construction companies. However, plaintiff testified that for "four or five years" next preceding the trial he had not worked "for any one else." No definite contract of any kind ever existed. Plaintiff was never employed for any definite time or term or at a fixed salary or wage per week, month or year. "Whenever Mr. Schmitt had a job" for him "he would call" plaintiff "and tell him to go to a certain job." Plaintiff was paid by the hour on the basis of the Union scale of wages. At the time plaintiff was injured he was paid the wage allowed a bricklayer foreman as he had been designated much of the time in recent years as foreman on the various jobs to which he was sent. At the time he was injured plaintiff was not working as foreman as it was the custom when a bricklayer foreman was sent to a job which had already been commenced under another foreman, as in this instance, the foreman first assigned continued in charge. It seems a foreman worked as a bricklayer but had the added responsibility of supervising the other bricklayers working on the job. The Union wage scale specified $1.75 per hour for a bricklayer and $1.87½ per hour for a bricklayer foreman. There was no contract or agreement, express or implied, whereby defendant was bound to furnish plaintiff any specific amount of work or for that matter employment of any kind or for any length of time. Defendant could at any time cease to call plaintiff and cease to further employ him. There was a wide variation and fluctuation during the course of a week, month or year in the number of hours of work performed by plaintiff. The number of hours he might be employed during any given time was wholly dependent upon the work defendant had under contract during such time and such preference as defendant might accord plaintiff in calling him in the first instance and in making assignments when called. Too, weather and other conditions would often interrupt the regularity and continuity of work after it was under way. Defendants paid their workmen, who worked by the hour, weekly; such weekly payment covering the aggregate number of hours the employee had worked during the week. The wages

paid plaintiff by defendant during and for the years 1925, 1926 and 1927 were shown. During thirteen weeks in 1925 and twelve weeks in 1926 plaintiff did no work and of course received no wages. The earnings during the three years fluctuate with a range in amount from as low as $14.05 in the course of one week to $82.50 for one week. In 1925 plaintiff's earnings aggregated $2564.10; 1926, $2739.35 and, as stated, supra, $3642.25 in 1927. In 1927 he worked some time each week and yet had defendant employed him a few work hours less during the year his aggregate earnings for that year would have fallen below $3600. It is apparent that the number of hours of work which might be afforded him in a year, a month or a week, assuming that defendant continued to call him and give him work, was uncertain and impossible of ascertainment in advance; and the aggregate amount of his earnings for a year would remain undetermined and undeterminable until the end of the year. Had plaintiff been injured at some time in 1925 or 1926 he would, according to his theory, have been under the Compensation Act for there being no contract as to a definite time, term or number of hours of work to be afforded him during the year no basis existed for computing his earnings for a year or to determine that his earnings for the year would exceed $3600. His earnings during neither year amounted to $3000. Had he been injured the first week or second week in December, 1927, the same situation would have existed. But plaintiff contends, in order to maintain this action, that when his aggregate earnings during the year 1927, or within the period of one whole year next preceding the date of his injury, exceeded $3600 he was thereupon and thereafter excluded from the operation of the Compensation Act. By the same reasoning if during the next or following period of one year the aggregate of his earnings should be less than $3600 he would again come within the Compensation Act. Following plaintiff's theory had one of plaintiff's fellow workmen, employed under the same conditions as plaintiff, doing the same work, at the same wage per hour, but who had worked a few hours less than plaintiff during the year, been also injured in the same accident in which plaintiff was injured, such fellow workman would be within the Compensation Act while plaintiff would be excluded from its operation. The construction and application of the excluding provision of Section 3305, supra, which plaintiff undertakes tends to uncertainty and confusion. Though plaintiff had worked for defendant company, pursuant to the arrangement above described, for three consecutive years next preceding the date of injury and the aggregate of his earnings for each year was shown nevertheless plaintiff does not consider the earnings during the other years but adopts as his "average annual earnings" the aggregate of his earnings during the one year next preceding the injury. If it be granted that though there be no definite contract of employment for the term of a year or more at a specified salary or

wage from which it could be determined that the earnings of the employee during the course of a year would exceed $3600 and that the "average annual earnings," in such case, should be determined upon the basis of claimant's earnings prior to the injury it would then seem that when, as in this case, the employee has worked for two or more consecutive years prior to the injury for the employer against whom he makes his claim, under the same arrangement or conditions of employment which prevailed at the time of his injury, and the aggregate of his earnings during each of said years is shown, his "average annual earnings" would be the average of the earnings during the number of years he had been so employed which in this instance would be less than $3600 and plaintiff therefore within the Compensation Act.

There are only a few states in which the Compensation Act is limited to employees or workmen who earn less than a specified amount (See Schneider's Workmen's Compensation Law, sec. 34) and though the language of the statutes having such a limitation varies somewhat the few decisions to be found agree as to the legislative intent concerning same. The Workmen's Compensation Act of the State of Vermont provided, at the time the case Kelley's Dependents v. Hoosac Lumber Co., 95 Vt. 50, 113 Atl. 818, arose, that the act did not apply to a workman whose remuneration exceeded $2000 per year. It was claimed that Kelley who was killed in an accident arising out of and in the course of his employment by the lumber company did not come under the act because his remuneration for a year, computed on the basis of his earnings to the time of his death, would exceed $2000. The contract of employment "ran for no particular time but could be terminated at any time." The Supreme Court of Vermont said:

"The whole question depends upon the construction of the statute. The Legislature has not pointed out the proper method of procedure to ascertain the remuneration, and there are no decisions to give much aid to the proper solution of that problem. In these circumstances, we are at full liberty to ascribe to this provision a meaning which, in our judgment, best accords with the general legislative intent, and best carries into effect the beneficent purposes of the act. This requires us to adopt such a construction as will extend its provisions to the largest possible class of employees, and to restrict those excluded from its provisions to the smallest possible class. We ought also to give it such a construction as will make its application as certain as possible to the end that both employer and workman may know in advance whether it is to regulate their relations or not.

"We hold, therefore, that the only employees excluded from the act under this section are those working under a contract the definite term of which is one full year or more, and at a determined or

determinable wage amounting to more than $2,000; and that all other employees, regardless of the total amount earned, are within the act. . . .

"The construction we. adopt makes the provision simple and workable, and harmonizes both with the spirit of the act itself and the spirit of the times which prompted its passage by the Legislature. Tested by this rule, Kelley was within the act."

The Rhode Island Compensation Act defines an "employee" as "any person who has entered into the employment of, or works under contract of service . . . with any employer, and whose remuneration does not exceed three thousand dollars a year." At the time of his death James A. Toop had been continuously employed by the Livingstone Worsted Company for more than twenty years "as overseer of dyeing." He died August 27, 1926, "as the result of injuries sustained in the course of his employment." Toop "was employed and paid by the week." In 1920 his wages were increased to $70 a week and "continued at that amount until his death." His widow and sole dependent "claimed that her husband was not an 'employee' subject to the provisions of the Workmen's Compensation Act, because his remuneration exceeded $3000 a year." Of this contention the Supreme Court of Rhode Island (Livingstone Worsted Co. v. Toop, 48 R. I. 368, 138 Atl. 183) said:

"In construing the Workmen's Compensation Act we have held that it is to be interpreted with a liberality calculated to effectuate its purpose, and that it should receive such a construction as will extend its benefits to the largest possible class of employees and restrict those excluded to the smallest possible class. . . .

"On the facts appearing in this cause we are of the opinion that the deceased was an 'employee' within the meaning of said act. The deceased had no contract of service with petitioner for wages exceeding $3000 a year. His term of employment was by the week. At the end of any week he could cease working for petitioner or the petitioner could discharge him."

[See, also, O'Bannon Corporation v. Walker, 46 R. I. 509, 129 Atl. 599; Hauter v. Coeur D'Alene Antimony Mining Co., 39 Idaho, 621, 228 Pac. 259.] We find no Missouri decision discussing the excluding provision of our Compensation Act as applied to a state of facts similar to that in the instant case. Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, cited by appellant, construes such provision as applied to a much different state of facts. However in that case subdivision (a) of Section 3305 is arranged and stated in this manner: "The word 'employee' . . . shall be construed to mean every person in the service of any employer . . . under any contract of hire, express or implied, oral or written . . . but (the word 'employee') shall not include persons whose average annual earnings (under any contract of hire, express

or implied, oral or written) exceed three thousand six hundred dollars.''

■ Our conclusion is that it was the legislative intent that the excluding provision in our statute should apply only to employment under a contract for a definite term of one full year or more at a fixed or determinable salary or wage so that if the term of employment be for one year only the minimum earnings thereby specified or fixed would for the whole year exceed $3600 or if the term of employment be for more than one year, or for two or more years, the average of such earnings for the whole period, or term of employment, computed on a yearly basis, would be in excess of $3600 a year. We think such construction tends to avoid confusion, contributes to certainty and extends the benefits of the Compensation Act to the ''largest possible class of employees'' while restricting ''those excluded'' therefrom to the ''smallest possible class.'' We therefore hold that plaintiff was within the Workmen's Compensation Act and that his claim against his employer, on account of the injuries sustained, is one properly cognizable by the Workmen's Compensation Commission which has exclusive jurisdiction thereof. [Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330.]

■ Plaintiff's petition pleaded an ordinary common-law action against his employer, for damages, for personal injuries alleged to have been sustained by him in the course of his employment, as a result of defendant's negligence. The petition further alleged that plaintiff's ''average annual earnings exceeded'' $3600 ''as provided'' by the Workmen's Compensation Act and that he ''is therefore entitled to bring this action.'' The petition did not allege the facts, shown by the evidence, or any facts, as to the manner, terms and conditions of plaintiff's employment or facts showing that the parties were under the Compensation Act. It stated a good cause of action at common law and since the want of jurisdiction of the circuit court to determine a controversy properly cognizable by the Workmen's Compensation Commission did not appear on the face of the petition it could not be met by a demurrer. Defendant therefore, by its answer pleaded the applicability of the Workmen's Compensation Act, that the circuit court did not, for that reason, have jurisdiction to hear and determine the controversy and that same was cognizable by the Workmen's Compensation Commission. But respondent argues, in effect, that though under the undisputed facts plaintiff was within the Compensation Act nevertheless defendant is precluded to deny the right of the circuit court to try and submit the case as a common-law action because by going to trial without first demanding some sort of a separate and preliminary hearing and determination of the averments in its answer invoking the Workmen's Compensation Act and challenging the jurisdiction of the circuit court upon that ground it waived its objections to a trial and submission of the case

by the circuit court as a common-law action. However we discover nothing in the course pursued by defendant or the procedure followed, upon the situation presented, supporting such contention or which could be construed as a waiver on the part of defendant of its claim, set up in its answer, that plaintiff was an employee within the meaning of the Compensation Act. Whether the case came within the provisions of the act was dependent upon the facts and lack of jurisdiction of the circuit court to adjudicate plaintiff's claim because, under the facts, the Workmen's Compensation Commission alone had cognizance thereof was an affirmative defense which defendant properly set up and made in its answer. [Kemper v. Gluck, supra.] Had plaintiff by his reply admitted the matter pleaded in the answer or set up the facts of plaintiff's employment shown by plaintiff's evidence in the trial of the case the court would then have been in a position to rule the applicability of the Compensation Act but the reply denied the affirmative matter pleaded in the answer and the issues thus made by the pleadings were for trial. In its answer defendant pleaded the applicability of the Compensation Act and that by reason thereof the court was without jurisdiction to determine the controversy; that was its contention and position at every stage of the trial and the ground of its demurrers offered at the close of plaintiff's case and at the close of all the evidence; and again the same contention was made and preserved in its motion for a new trial as a ground therefor. We cannot conceive of anything defendant could have further done to interpose and preserve the defense pleaded in bar by its answer and certainly the course pursued does not lend any support to the theory of waiver advanced by respondent. The evidence upon the trial, other than that relating to the extent and severity of plaintiff's injury, was uncontroverted and the facts adduced concerning plaintiff's employment, the manner, terms and conditions thereof, and his earnings, were in substance and effect the same on the part of both plaintiff and defendant, therefore defendant's demurrers at the close of plaintiff's case calling for a ruling by the court, as a matter of law, upon the applicability of the Compensation Act, under the facts, and again at the close of all the evidence, timely and sufficiently raised the question of the jurisdiction of the court to determine plaintiff's claim.

Plaintiff testified that after he fell from the scaffold he "was taken home and stayed at home a few days and the pain left me and I went out and notified Mr. Schmitt and he said he would notify the insurance people and let their doctor examine me and I waited for their doctor to come out and see me and they didn't and Mr. Schmitt said, 'you had better go and be examined;' " that pursuant to such direction of Mr. Schmitt, his employer, he went to a doctor, was examined by him and then, without further notice or communication with his employer, went to the hospital for the operation. Respond-

732

ent now asserts that the employer did not provide medical treatment as required by the Compensation Act and is thereby estopped from invoking the act. The evidence falls short of showing that the employer refused to provide medical treatment. The only reference to the matter is set out above. It seems the employer did direct plaintiff to be examined by a doctor. There is no showing that defendant refused to assume and meet, or denied, its liability under the Compensation Act to provide medical treatment at its own expense. It seems rather that plaintiff made no claim against his employer, to the benefits granted to him by the act but took the position he was without the act and relied upon this common-law action. It does not appear that the employer at any time asserted that the Compensation Act did not apply or that it was not liable to plaintiff for compensation according to the provisions thereof. Nor was plaintiff induced by any act of, or position taken by, the employer to pursue this action instead of proceeding under the Compensation Act. We are inclined to think that had the employer refused to provide medical treatment and denied any liability therefor the only effect thereof would be to authorize the employee to employ a physician of his own choosing and recover the expense of medical treatment in the proceeding before the commission. Where the employer neglects or refuses to provide the medical treatment required by the act, then, obviously the costs of such treatment, within the provisions of the Compensation Act, should be assessed against such employer in the proceeding before the commission.

Defendant's demurrers should have been sustained and it follows therefore that the judgment of the circuit court must be reversed. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.