H. F. MILLS, APPELLANT, v. CARTHAGE MARBLE CORPORATION, (EMPLOYER), MARYLAND CASUALTY COMPANY (INSURER), RESPONDENT.— — S. W. (2d) —.

Springfield Court of Appeals. February 5, 1937.

Rehearing denied February 24, 1937.

*Wright, Rogers & Margolin* for appellant.

*James D. Reeves* for respondents.

SMITH, J.—This appeal is from the denial of compensation under the Missouri Workmen's Compensation Act to the claimant, H. F. Mills.

He was injured May 29, 1934, in Arkansas on Highway 100, a short distance south of the Missouri-Arkansas State line. He was driving an automobile belonging to the employer, Carthage Marble Corporation, on company business, at the time of his injury, when the automobile was struck on the highway by a large truck. Claimant was severely injured, the injuries being to his left femur which was broken, resulting in imperfect union, left fibula out of joint, knee joint injured and movement impaired, region of knee cut, left leg shortened and weakened, left shoulder broken and movement impaired, left arm weak and atrophied, brain concussion, skull fractured, face and nose broken, eyesight impaired, chest and lungs injured. The extent of his permanent partial disability was reserved for later determination, temporary total disability having been conceded of record by respondents.

The place of employment was Carthage, Jasper County, State of Missouri, where claimant Mills lived and where Carthage Marble Corporation had its office and place of business. Maryland Casualty Company, one of the respondents, was the insurer and the policy of insurance introduced in evidence as Claimant's Exhibit "C" was in force and effect at the date of injury.

The employer and insurer were duly and promptly notified of the accident and injury. Claim was duly filed on November 28, 1934. The claim was heard by Referee R. S. McClintic, at Joplin, Missouri, February 21, 1935. On March 12, 1935, said referee found in favor of the employer and insurer and against claimant, denying his right to compensation. The full commission on review heard oral arguments on May 6, 1935, and on June 27, 1935, made final award denying compensation to the claimant, Commissioner JAY J. JAMES dissenting on the ground that the claimant was an employee for the reason that he was not under contract of employment for a definite period of one

full year or·more.· Claimant duly appealed to the Circuit Court of Jasper County,·where the matter was argued before Honorable WILBUR J. OWEN, Judge of Division 2 of said court, who on November 2, 1935, affirmed the award of the commission denying compensation to the claimant. On November 2, 1935, the claimant's appeal herein to this court was allowed by the Jasper County Circuit Court.

All proof in this proceeding was adduced by the claimant, none having been offered by the employer or insurer. The question in controversy is whether the facts so established by claimant, legally entitle him to compensation. The employer and insurer contend those facts show the claimant was not an employee within the terms of the Compensation Act, because he was paid in excess of $3600 during the year preceding his injury. The claimant asserts he was an employee within the terms of the act, because he was employed not for a term of one full year or more at a fixed compensation of more than $3600 per year, but for an indefinite time terminable at will by the board of directors of Carthage Marble Corporation.

Claimant was at the time engaged in his work as a salesman for the employer, Carthage Marble Corporation. He did what is known as salesman's work for Carthage Marble Corporation, which consisted of promoting its products, attending lettings and bidding the work in, at certain times following the work through and making collections, but his chief duties and activities were in selling the marble produced by his employer. His work was out of the office most of the time, taking him away from Carthage, Missouri. He.was vice-president and sales manager of Carthage Marble Corporation. His compensation covered all those duties. He started work as sales manager and did not become vice-president until 1931. His compensation was increased and then diminished following the year 1931, and another reduction was made in November, 1932. When he became vice-president of the company there was no change in the amount of his compensation. At a later time, his compensation was increased, but in November, 1932, it was reduced to $506 per month, and remained at that amount when he was injured—and thereafter. Appellant worked for no other company, but devoted his entire time to Carthage Marble Corporation. He had no office hours, but worked day and night as his duties required. His duties were not increased when he became vice-president.

It is conceded by all parties to this litigation that the·only question before us is whether the claimant comes under the provisions of the Workmen's Compensation Law so as to entitle him to benefits, or whether he is excluded because of his compensation being in excess of three thousand six hundred dollars as provided by Section 3305, Revised Statutes 1929, Mo. Stat. Ann., p. 8238. The pertinent part of this section is:

"Sec. 3305—CERTAIN TERMS OF ACT DEFINED— (a) the word 'employee' as used in this chapter shall be construed to mean

every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, but shall not include persons whose average annual earnings exceed three thousand six hundred dollars, . . ."

It is the contention of the claimant that at the time of his injury he was not employed by the Carthage Marble Corporation for any definite time, and that his employment was terminable at will by the employer, therefore his was not a contract of employment for one full year or more at a fixed salary for such period in excess of $3600 and that he was not excluded from the benefits of the Compensation Act by the provisions of the above quoted section 3305.

He bases his contention almost exclusively upon the wording of said section, and upon a recent decision of the Supreme Court in the case of Klasing v. Fred Schmitt Contracting Company, 73 S. W. (2d) 1011.

Of course if the facts in this case are sufficiently similar to the facts in the Klasing case to bring the case within the rule determined by the Supreme Court, there is no question as to our conclusions here, for we are bound by the latest holding of the Supreme Court. It is not necessary for us to recite here the facts in the Klasing case, for the parties to this litigation are familiar with them. We have read them. The inquiring mind may turn to 73 S. W. (2d) 1011, and ascertain what the facts are there. It is sufficient for us to say that we think the facts in the instant case are so different from those in the Klasing case, that we cannot reach the conclusion here that the claimant comes within the provisions of the compensation act so as to entitle him to recover.

Let us look again at the provisions of Section 3305, supra. This section in very plain words sets out what the word "employee" means, and then it says "but shall not include persons *whose average annual earnings* exceed three thousand six hundred dollars." (Italics ours.)

Keeping in mind the provisions of the above section, let us look a bit to the facts in this case as furnished by the claimant. (There being no evidence offered by the respondents.)

As we understand the above section, it does not stress the kind of a contract of employment. It says "under any contract of hire." It also expressly excludes persons whose average annual earnings exceed three thousand six hundred dollars. We think the evidence in this case shows that at the time of the injury there was a contract of hire either express or implied, existing between the claimant and the employer. There is no contention that there was no contract. The contention is that there was no contract for a definite term of one full year or more.

As we view the statute, in the light of the construction placed

thereon in the Klasing case, we think the question for determination is whether the claimant's average annual earnings exceed $3600.

There was no question at all but that the claimant had been working for the employer for several years prior to his injury. He began his employment in 1926 under a written contract of hire whereby he received $6500 per year. He was under continuous employment from 1926 up to the date of his injury. On November 17, 1932, his compensation was fixed by the board of directors of the company at $6072, per year, and this compensation continued until his injury, and that was as small compensation as he received at any time since 1926. Some of the time he received more, but never less than $6072 per year. He worked continuously through these years and received his pay regularly. At no time was his annual earnings as small as $3600, and in fact at no time was his annual earnings as small as $6000. In this respect are the facts entirely different from the facts in the Klasing case. In that case, the court considered Klasing's earnings for the three years prior to his injury. In only one of those years did his earnings pass $3600, and for the other years his earnings were considerably under $3600, so as to make his average annual earnings less than $3600. And then, too, Klasing was a bricklayer and worked and was paid by the hour, and at no time was he employed except when called for certain jobs. Not so in the instant case. We quote a part of what the claimant said when on the stand:

"Q. Mr. Mills, you were the vice-president and sales manager of the Carthage Marble Company? A. In those capacities I have an office; yes.

"Q. That is what you were called over there generally? A. Yes, sir.

"Q. And you just had one salary that covered all of your duties as you have enumerated them; is that not correct? A. Yes, sir.

"Q. You started to work in 1926? A. Yes, sir.

. . . . . .

"Q. How did you start? A. As sales manager.

"Q. When did you become a vice-president? A. I believe it was in 1931.

"Q. Now, from 1926 to 1931, while you were merely a salesman, what was your salary? A. Sixty-five hundred.

"Q. That is the figures per year as fixed by the board of directors? A. No.

"Q. Who fixed that figure? A. I was under a contract.

"Q. Written contract? A. Yes, sir.

"Q. You took the office of vice-president at the same salary sixty-five hundred? A. Yes, sir.

"Q. You stated you were getting five hundred and six dollars per month at the time of this accident? A. That is correct.

. . . . . . .

"Q. I see. Then Mr. Mills, from the time you first started your employment with the Carthage Marble Corporation down to the date of this accident the lowest salary you received at any time was five hundred and six dollars a month; is that correct? A. I think so.

"Q. Now—now, did you work for any other company during this period from 1926? A. No, sir.

"Q. You devoted your entire time to this position? A. Yes, sir.

"Q. You worked during the period of the entire year whenever the duties of the business required you to work; is that correct? A. When the duties required the work?

"Q. Yes. A. No I worked regardless of the duties of the business. Put it that way.

"Q. Were you given a vacation? Were you given a vacation during each year? A. No.

"Q. No vacation? A. Had one vacation since I have been with the company.

"Q. So since 1926 you think you have worked fifty-two weeks per year? A. With one exception.

"Q. When was that? A. That was in 1927, I believe.

"Q. I see. A. I had two weeks vacation and since then I have never taken one.

"Q. Were you required to fix any—Were you required to work any fixed number of hours per day or did you use your own judgment about the time you should work? A. My own discretion?

"Q. Your own discretion? A. Yes, sir.

"Q. Now, you are still an employee and have been continuously since 1926; is that correct? A. Yes, sir.

"Q. You have never been discharged during that time? A. Not officially.

"Q. This company—this company operates the full period of each year, do they not, Mr. Mills? A. Yes, sir. Providing we have business."

The claimant introduced in evidence a resolution of the executive committee of the Carthage Marble Corporation, which we quote from the record as follows:

"Mr. Wright: The claimant now offers in evidence the resolution adopted at a meeting of the executive committee of the Carthage Marble Corporation held November 17, 1932, which is as follows: The annual official salaries beginning January 1, 1933, will be as follows: A. J. Maher, sixty-eight hundred and forty dollars; H. F. Mills six thousand and seventy-two dollars; W. E. Carter, ten hundred and twenty dollars; Roy E. Mayes, thirty-six hundred dollars."

The claimant offered in evidence several sections of the by-laws of the Carthage Marble Corporation, among these being sections Twenty-six and Twenty-seven, as follows: "Section Twenty-six: Salaries of

all officers and agents of the corporation shall be fixed by the board of directors.

·"Section Twenty-seven: The officers of the corporation shall hold office until their successors are chosen and qualified in their stead. Any officer elected or appointed by the board of directors may be removed at any time by an affirmative vote of a majority of the whole board of directors."

The claimant used as a witness R. E. Mayes, controller, secretary and treasurer, who testified, in part as follows:

"Q. Has Mr. Mills' salary twice been reduced; one time January 1, 1932, ten percent; one time January 1, 1933, an additional five percent by the board of directors during the fiscal years? A. Yes, sir.

"Q. And is the amount of the salary so reduced by the board of directors during the year the same which you as treasurer of the company have paid Mr. Mills for his compensation? A. Yes, sir.

"Q. What does the company actually do in determining the amount of salary paid to Mr. Mills? A. They take the amount that is set up by the board of directors and divide by twelve to get the monthly rate. That is what is usually—that is the interpretation that my office gives them; that the salary in the set-up in the annual meeting is a measure for the monthly payment.

"Q. How long have those payments been continued, that is, with respect to any other action by the board of directors?

"Mr. Reeves: I object to anyone else beside Mr. Mills. If he is. talking about anybody else it would be immaterial.

"Referee McClintic: Objection is sustained.

"Mr. Wright (direct examination continued):

"Q. When the board of directors has so fixed the salary for a year, you paying him one-twelfth of that amount per month, how long is that continued with reference to any further action by the board of directors?

"Mr. Reeves: I object to that as calling for a conclusion and goes beyond the facts of what actually did happen.

"Referee McClintic: Objection is overruled.

"A. I paid him until some further change. That was the measure we used until we were instructed by the board of directors to do otherwise.

"Mr. Wright (direct examination continued):

"Q. Until changed by the board of directors? A. Yes, sir.

"Q. And if that change is made during the year to a smaller amount the salary then paid to him is a smaller amount? A. Yes, sir."

As we view the facts in this case we think these facts present exactly the opposite situation from the situation presented in the Klasing case. There are none of the uncertainties in this case that were in the Klasing case. There no fixed salary or earnings were determined

prior to the doing of the work. Quoting from that opinion at page 1013 we find, "There was no contract or agreement, express or implied, whereby defendant was bound to furnish plaintiff any specific amount of work or for that matter employment of any kind or for any length of time. Defendant could at any time cease to call plaintiff and cease to further employ him. There was a wide variation and fluctuation during the course of a week, month, or year in the number of hours of work performed by plaintiff. The number of hours he might be employed during any given time was wholly dependent upon the work defendant had under contract during such time and such preference as defendant might accord plaintiff in calling him in the first instance and in making assignments when called. Too, weather and other conditions would often interrupt the regularity and continuity of work after it was under way. Defendants paid their workmen, who worked by the hour, weekly; such weekly payment covered the aggregate number of hours the employee had worked during the week. The wages paid plaintiff by defendant during and for the years of 1925, 1926 and 1927 were shown. During thirteen weeks in 1925 and twelve weeks in 1926 plaintiff did no work and of course received no wages. The earnings during the three years fluctuate with a range in amount from as low as $14.05 in the course of one week to $82.50 for one week. In 1925, plaintiff's earnings aggregated $2564.10; 1926, $2739.35; and, as stated *supra*, $3642.25 in 1927. In 1927, he worked some time each week, and yet had defendant employed him a few work hours less during the year his aggregate earnings for that year would have fallen below $3600. It is apparent that the number of hours of work which might be afforded him in a year, a month, or a week, assuming that defendant continued to call him and to give him work, was uncertain and impossible of ascertainment in advance; and the aggregate amount of his earnings for a year would remain undetermined and undeterminable until the end of the year."

The facts in this case present an entirely different situation. Here are the elements of certainty. Here the amount of the salary as a salesman and officer of the company was determined in advance as shown by the claimants own testimony and by that of the minutes of the company, and by the monthly payments made to the claimant, which payments were made by taking one-twelfth of the salary determined in advance of the work by the board of directors. Not only is this case certain as to the amount agreed to be paid to the claimant, but it is certain as to the amount that had been paid throughout all the years he had worked. It was definitely shown that his "average annual earnings exceed three thousand six hundred dollars."

The claimant in his brief says that the Supreme Court in the Klasing case set out two simple tests to distinguish employees within the act from those not under it. He says it is the asking and answering two simple questions as follows:

"Question No. 1. Is he employed for *a definite term of one full year or more?*

"If the answer is 'No,' then he is under the act.

"If the answer is 'Yes,' then and only then is one additional question necessary.

"Question No. 2. Does such contract provide definitely for a *fixed or determinable salary or wage which would* for the whole year *exceed* $3600.00?

"If the answer is 'Yes,' then he is not under the act.

"If the answer is 'No,' then he is under the act."

We can think of cases wherein it might be difficult to answer these questions, but under the facts in this case as presented to the Commission, the Circuit Court, and finally to us, we think the testimony clearly shows that the claimant was definitely employed at a fixed annual salary and that that salary was more than $3600.

And we my say in passing that these monthly payments had not stopped at the time of taking the evidence in this case, with the exception of two monthly payments. When the claimant was being examined these questions were asked him, and the answers given:

"Q. Now, you are still an employee and have been continuously since 1926; is that correct? A. Yes, sir.

"Q. You have never been discharged during that time? A. Not officially.

"Q. Now, from the date of this accident, May 29th, up to the present time you have received your full salary or has there been any discontinuance of your salary? A. There is a slight question regarding two months of the salary—still pending during that period which is a matter for the board to decide at our next meeting.

"Q. That is the two months while you were unable to work? A. That is correct.

"Q. That has not yet been determined by the board of the Carthage Marble Corporation? A. No, sir.

"Q. Now, from November 15, 1934, up to the present time you have received your regular salary of five hundred and six dollars? A. From when?

"Q. Since November 15, 1934, up to the present time you have received your full salary of five hundred and six dollars a month? A. Yes, sir."

It is no part of this hearing for us to determine whether or not the company should pay the two monthly payments above mentioned, but if those payments are deducted from the annual salary as determined by the board, it would still leave an amount in excess of $3600.

We think under the plain wording of the statute, and the uncontradicted testimony submitted by the claimant that he cannot recover in this case. We believe we are sustained in this conclusion by the

following authorities. Section 3305, Revised Statutes 1929, Mo. Stat. Ann., p. 8238. [Klasing v. Fred Schmitt Contracting Co., 73 S. W. (2d) 1011; Russell v. Ely & W. D. G. Co., 60 S. W. (2d) 44; Conklin v. K. C. Pub. Service Co., 41 S. W. (2d) 608; Sleyster v. Eugene Donzelot & Son, 25 S. W. (2d) 147, 148; Glaze v. Hart et al., 36 S. W. (2d) 684.]

The claimant insists that the insurer is estopped to deny that he was an employee under the Compensation Act. In view of what we have heretofore said, we deem it unnecessary to pass on that question.

It follows from what we have said that it is our conclusion that the judgment in this case was for the right parties, and that the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Fulbright, J.,* concur.