STATE OF MISSOURI at the relation of H. F. MILLS, Relator, v. PERRY T. ALLEN ET AL., Judges of the Springfield Court of Appeals.— 128 S. W. (2d) 1040.

Court en Banc, June 6, 1939.*

---

*NOTE: Opinion filed at September Term, 1938, April 4, 1939; motion for rehearing filed; motion overruled at May Term, 1939, June 6, 1939.

744

*Wright, Rogers & Margolin* and *Frank E. Atwood* for relator.

*Harris & Koontz* and *James D. Reeves* for respondents.

*Fordyce, White, Mayne, Williams & Hartman* and *G. Carroll Stribling* for Consolidated Underwriters, *amicus curiae.*

*William H. Biggs* for Clara R. Morse.

TIPTON, C. J.—This case comes to the writer on reassignment. It is certiorari to the Judges of the Springfield Court of Appeals, bringing up the record in the case of Mills, Appellant, v. Carthage Marble Corporation, Respondent, reported in 102 S. W. (2d) 769. That court affirmed the circuit court's judgment which had approved the action of the Missouri Workmen's Compensation Commission in denying compensation to relator. The Commission found that relator was not an employee as that word is defined by Section 3305, Revised Statutes 1929, because his average annual earnings exceeded three thousand six hundred dollars.

In certiorari, we are limited to the finding of a conflict between the Court of Appeals' opinion and the latest ruling of this court on the subject, either as to a general principle of law announced or as to a ruling under a like, analogous, or similar state of facts. The purpose of certiorari is to secure uniformity in opinions and harmony in the law. [State ex rel. Himmelbach v. Becker, 337 Mo. 341, 85 S. W. (2d) 420.] We are authorized to quash an opinion of the Court of Appeals only when its opinion conflicts with an opinion of this court. It is immaterial what we may think of the question as an original proposition. [State ex rel. St. Louis-San Francisco Ry. Co. v. Haid, 327 Mo. 217, 37 S. W. (2d) 437.]

The only opinion of this court that relator claims the decision conflicts with is the case of Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 73 S. W. (2d) 1011. In that case the plaintiff was a bricklayer and the defendant a building contractor for whom the plaintiff worked. The suit was at law for damages for personal injuries sustained by plaintiff due to the alleged negligence of the defendant. The essential facts in that opinion are as follows:

"There was no contract or agreement, express or implied, whereby defendant was bound to furnish plaintiff any specific amount of work or for that matter employment of any kind or for any length of time. Defendant could at any time cease to call plaintiff and cease to further employ him. There was a wide variation and fluctuation during the course of a week, month, or year in the number of hours of work performed by plaintiff. The number of hours he might be employed during any given time was wholly dependent upon the work defendant had under contract during such time and such preference as defendant might accord plaintiff in calling him in the first instance and in making assignments when called. Too, weather and other conditions would often interrupt the regularity and continuity of work after it was underway. Defendants paid their workmen, who worked by the hour, weekly; such weekly payment covering the aggregate number of hours the employee had worked the week. The wages paid

plaintiff by defendant during and for the years 1925, 1926 and 1927 were shown. During thirteen weeks in 1925 and twelve weeks in 1926 plaintiff did not work and of course received no wages. The earnings during the three years fluctuate with a range in amount from as low as $14.05 in the course of one week to $82.50 for one week. In 1925 plaintiff's earnings aggregated $2,564.10; 1926 $2,739.35; and, as stated supra, $3,642.25 in 1927. In 1927 he worked some time each week, and yet had defendant employed him a few hours less during the year his aggregate earnings for that year would have fallen below $3,600. It is apparent that the number of hours of work which might be afforded him in a year, a month, or a week, assuming that defendant continued to call him and to give him work, was uncertain and impossible of ascertainment in advance; and the aggregate amount of his earnings for a year would remain undetermined and underterminable until the end of the year.'' [See 335 Mo. 721, l. c. 726-727, 73 S. W. (2d) 1011, l. c. 1013.]

We held the demurrer to the evidence should have been sustained because the plaintiff came within Section 3305 (a) of the Compensation Act. That section is as follows:

''The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, but shall not include persons whose average annual earnings exceed three thousand six hundred dollars. . . .''

In ruling that case we said:

''Our conclusion is that it was the legislative intent that the excluding provision in our statute should apply only to employment under a contract for a definite term of one full year or more at a fixed or determinable salary or wage, so that if the terms of employment be for one year only the minimum earnings thereby specified or fixed would for the whole year exceed $3,600 or if the term of employment be for more than one year, or for two or more years, the average of such earnings for the whole period, or term of employment, computed on a yearly basis, would be in excess of $3,600 a year. We think such construction tends to avoid confusion, contributes to certainty, and extends the benefits of the Compensation Act to the 'largest possible class of employees,' while restricting 'those excluded' therefrom to the 'smallest possible class.' We therefore hold that plaintiff was within the Workmen's Compensation Act and that his claim against his employers, on account of the injuries sustained, is one properly cognizable by the Workmen's Compensation Commission which has exclusive jurisdiction thereof. Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330.'' [335 Mo. 721, l. c. 730, 73 S. W. (2d) l. c. 1015.]

We think the facts as found by the respondents are distinguishable

from the Klasing case. The essential facts of the case under review are as follows: The relator was employed by defendant, the Carthage Marble Corporation, in the year 1926 under a written contract; he was injured May 28, 1934, in Arkansas on Highway 100, while he was driving an automobile belonging to his employer while on its business. The only question before the respondents was whether the relator came under the provisions of the Workmen's Compensation Law so as to entitle him to benefits, or whether he was excluded because of his compensation being in excess of three thousand six hundred dollars as provided by Section 3305(a), supra.

"Claimant (relator) was at the time engaged in his work as a salesman for the employer, Carthage Marble Corporation. He did what is known as salesman's work for Carthage Marble Corporation, which consisted of promoting its products, attending meetings and bidding the work in, at certain times following the work through and making collections, but his chief duties and activities were in selling the marble produced by his employer. His work was out of the office most of the time, taking him away from Carthage, Missouri. He was vice president and sales manager of Carthage Marble Corporation. His compensation covered all those duties. He started work as sales manager and did not become vice president until 1931. His compensation was increased and then diminished following the year 1931, and another reduction was made in November, 1932. When he became vice president of the company, there was no change in the amount of his compensation. At a later time, his compensation was increased, but in November, 1932 it was reduced to $506 per month, and it remained at that amount when he was injured—and thereafter. Appellant worked for no other company, but devoted his entire time to Carthage Marble Corporation. He had no office hours, but worked day and night as his duties required. His duties were not increased when he became vice president." [102 S. W. (2d) 1. c. 770.]

A section of the by-laws of the Carthage Marble Corporation provided that "The officers of the corporation shall hold office until their successors are chosen and qualified in their stead. Any officer elected or appointed by the board of directors may be removed at any time by an affirmative vote of a majority of the whole board of directors."

It was the contention of the relator that at the time of his injury he was not employed by the Carthage Marble Corporation for any definite time, as his employment was terminable at will by the employer, therefore his was not a contract of employment for one full year or more at a fixed salary for such period in excess of three thousand six hundred dollars and that he was not excluded from the benefits of the Compensation Act by the provisions of Section 3305(a) as that section was interpreted by the Klasing case.

In ruling the case at bar the respondents in their opinion said:

"It is sufficient for us to say that we think the facts in the instant

case are so different from those in the Klasing case that we cannot reach the conclusion that the claimant comes within the provisions of the Compensation Act so as to entitle him to recover.

"Let us look again at the provisions of Section 3305, supra. This section in very plain words sets out what the word 'employee' means, and then it says, 'but shall not include persons *whose average annual earnings* exceed three thousand six hundred dollars.' (Italics ours.)

"Keeping in mind the provisions of the above section, let us look a bit to the facts in this case as furnished by claimant. (There being no evidence offered by the respondents.) ·

"As we understand the above section, it does not stress the kind of a contract of employment. It says 'under any contract of hire.' It also expressly excludes persons whose average annual earnings exceed $3,600. We think the evidence in this case shows that at the time of the injury there was a contract of hire, either express or implied, existing between the claimant and the employer. There is no contention that there was no contract. The contention is that there was no contract for a definite term of one full year or more.

"As we view the statute, in the light of the construction placed thereon in the Klasing case, we think the question for determination is whether the claimant's average annual earnings exceed $3,600.

"There was no question at all but that the claimant had been working for the employer for several years prior to his injury. He began his employment in 1926 under a written contract of hire whereby he received $6,500 per year. He was under continuous employment from 1926 up to the date of his injury.   .  .  .  As we view the facts in this case, we think these facts present exactly the opposite situation from the situation presented in the Klasing case. There are none of the uncertainties in this case that were in the Klasing case. There no fixed salary or earnings were determined prior to the doing of the work.  .  .  .  The facts in this case present an entirely different situation. Here are the elements of certainty. Here the amount of the salary as a salesman and officer of the company was determined in advance as shown by the claimant's own testimony and by that of the minutes of the company, and by the monthly payments made to the claimant, which payments were made by taking one-twelfth of the salary determined in advance of the work by the·board of directors. Not only is this case certain as to the amount agreed to be paid to .the claimant, but it is certain as to the amount that had been paid through all the years he had worked.· ·It was definitely shown that his 'average annual earnings exceed three thousand six hundred dollars.' "   [102 S. W. (2d) l. c. 771-773.]

While it is true the respondents found that there was a contract of employment, and found that relator's annual earnings were in excess of three thousand six hundred dollars, in fact at no time was his annual earnings as small as $6,000, yet respondents did not find there

was a contract for a definite term of one full year or more. Ruling on these facts the respondents held that relator was not an employee as that term is used in Section 3305. In so ruling, the respondents' opinion does not follow that part of the Klasing case wherein we said "Our conclusion is that it was the legislative intent that the excluding provision in our statute should apply only to employment under a contract for a definite term of one full year or more at a fixed or determinable salary or wage . . ."

█ However, we are of the opinion that the Klasing case should no longer be followed but should be overruled. In an opinion written by Commissioner Cooley in the case of Sayles v. Kansas City Structural Steel Company and American Mutual Liability Insurance Company, 344 Mo. 756, 128 S. W. (2d) 1046, and adopted by Division Two of this court the Klasing case was overruled on this point. However, as the Klasing case was a decision of Division One of the court the Sayles case was transferred to Banc where it is now pending.

We adopt the reasons assigned by Commissioner Cooley in overruling the Klasing opinion which are as follows:

"Statutes are to be construed, if possible, so as to harmonize and give effect to all their provisions, Gasconade County v. Gordon, 241 Mo. 569, 145 S. W. 1160, 'and provisions not therein found plainly written or necessarily implied from what is written will not be imparted or interpolated therein in order that the existence of such right may be made to appear when otherwise, upon the face of said act, it would not appear.' [Allen v. St. Louis-San Francisco Ry. Co., 338 Mo. 395, 402, 90 S. W. (2d) 1050, 1053.] Section 3305, which defines 'employee,' reads (so far as here pertinent): 'The word "employee" as used in this chapter shall be construed to mean every person in the service of any employer . . . under any contract of hire, express or implied, oral or written, or under any appointment or election, but shall not include persons whose average annual earnings exceed three thousand six hundred dollars.' That section does not define 'earnings' or provide how they are to be determined. Section 3320 prescribes the basis for computing compensation. [Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S. W. (2d) 264, 269.] Paragraphs (a) and (b) of said section read:.

" '(a) The compensation shall be computed to be the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury.

" '(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident uninterrupted by absence from work due to illness or any other unavoidable cause.'

"Section 3319, which provides for the benefit or compensation to dependents in case of death of an employee, refers to Section 3320.

We shall speak further of Sections 3319 and 3320. Going back to Section 3305, when the Legislature said that 'employee' shall be construed to mean 'every person' working under any contract of hire, express or implied, oral or written, and in the same sentence added 'but shall not include "persons" whose average annual earnings exceed three thousand six hundred dollars' it clearly, we think, used the word 'persons' the second time in the same sense as previously used in the same sentence, viz., persons working under any contract of hire, express or implied, oral or written. So, by the statute, persons working under contract of hire, express or implied, oral or written, whose average annual earnings exceed $3,600, are excluded from the operation of the Act. We so construed the excluding clause of Section 3305 in Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 652, 60 S. W. (2d) 44, 46, (3).

"It seems to us that to hold that the excluding provision of the statute applies only to employment for a definite term of one full year or more at a fixed salary or wage is to read into the statute something that is not written there nor necessarily,—or even fairly—implied from what is there written. Indeed, the implication, if any is to be indulged, is the other way. A contract for a definite term at a fixed salary or wage would be an express, not an implied, contract, and the statute expressly mentions implied contracts. Also, it says any contract oral or written. In view of our Statute of Frauds, Section 2967, Revised Statutes 1929 (Mo. Stat. Ann., p. 1835), there cannot be an enforceable oral contract for more than one year nor one that cannot be fully performed within one year from the making thereof. If, for example, an oral agreement for the rendition of service for a term of one year is made today but the year is to begin, say, a week hence, the agreement could not be fully performed within one year from the making thereof and would be within the Statute of Frauds and unenforceable. [Truitt v. Rothschild-Greenfield Co. (Mo. App.), 32 S. W. (2d) 770.]

"Neither do we find in other provisions of the Compensation Act anything that in our judgment calls for construing the exclusion clause of Section 3305 to mean only employment under a contract for a definite term of one full year or more. Section 3319, which provides for death benefits, provides in paragraph (a) for certain expenses of the deceased's last sickness and burial expenses. Paragraph (b) provides for a single total death benefit, the amount thereof to be determined by first determining as a basis for computation 66 2/3 per cent of the employee's average weekly earnings during the year immediately preceding the injury 'as provided in Section 3320,' and multiplying such sum by 300. We have quoted paragraphs (a) and (b) of Section 3320. Other paragraphs of that section point out how 'annual earnings' are to be determined under various other circumstances,—as:—(c), if the injured person has not been em-

ployed by the same employer for the full year preceding the injury; (d), as to employees in employments which customarily operate throughout the working days of the year and (e), in employments operating only part of the whole number of working days; (f), where the injured employee has earned either no wage or less than the earnings of adult day laborers in similar employments in the locality; (g), that in computing annual earnings certain items of board, rent, etc., furnished by the employer as part of the employee's remuneration are to be included. All these paragraphs use the term 'annual earnings' or its equivalent. In none do we find language indicating that the employment must have been under a contract for a definite term and in several it could scarcely have been so. Section 3320 uses the terms 'injured person' and 'employee' but, as we have shown, Section 3319, providing for death benefits, specifically points to Section 3320 for the method of computing such benefits, as in terms do Sections 3312 ('Waiting period,—compensation—basis for payment') and 3315 ('Permanent partial disability—compensation for various injuries'), and in effect 3316, relating to permanent total disability. Section 3316 also uses the term 'average annual earnings.' It thus appears that Section 3320 provides the basis for computing compensation for death as well as disability resulting from injury. And Section 3305 says, 'Any reference to any employee who has been injured, shall, when the employee is dead, also include his dependents, and other persons to whom compensation may be payable.'

"Paragraph (a) of Section 3320 provides that the compensation shall be computed on the basis of the 'annual earnings' received by the injured person 'as salary, wages or earnings' if in the employment of the same employer continuously during the year next preceding the injury. Paragraph (b) says 'Employment by the same employer shall be taken to mean employment . . . in the grade in which the employee was employed at the time of the accident . . .' At the time of the accident Sayles was employed in the same capacity,—in the grade—in which he had been employed continuously for two years and seven months next preceding. He was a competent man, liked and valued by his employer and the latter desired to keep him and to be assured of his continued and exclusive services. There is every reason to believe that his employment would have continued, not only through the then current year but thereafter. Though he could have been discharged or could have quit at any time there is nothing in the evidence to indicate a likelihood of such thing happening. The evidence indicates a strong likelihood that it would not have happened. Under the evidence the Commission could legitimately find that his employment was steady and continuous. See for discussion of this question Reid v. British and Irish Steam Packet Company, Limited (1921), 2 K. B. 319 (1921) W. C. and I. 336, so holding of a like employment under similar conditions. . . .

"In applying the statute its provisions must be harmonised, if possible, as we have said. If claimant is entitled to compensation the amount must be computed on the basis fixed by Section 3320, since Sayles had been employed by the same employer and in the same grade of employment for more than a full year next preceding the accident, resulting that payment would have to be on the basis of $78 per week (not counting any overtime), or 'annual earnings' of $4,050. Exclusion from the Act is based on the 'average annual earnings.' Section 3305 does not define or point out how to determine 'annual earnings.' Section 3320 does. If payment of benefits must be based upon annual earnings, as determined under Section 3320, it would seem inconsistent and illogical to use a different measuring rod in determining 'average annual earnings' in applying the exclusion clause of Section 3305, when the statute does not so command, as we think it does not.

"In Klasing v. Fred Schmitt Contracting Co., supra, the court cites and quotes from Kelley's Dependents v. Hoosac Lumber Co., 95 Vt. 50, 113 Atl. 818. That case does seem to support the conclusion announced in the Klasing case. But there is a difference between the Vermont statute and ours that we think is worthy of note. The Vermont statute, General Laws (1917), section 5758, defines ' "Workman" and "employee" to mean a person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer, but not to include a person whose . . . remuneration exceeds two thousand dollars a year.' It does not, however, contain the further words of our statute, characterizing the contract as 'express or implied, oral or written,'—words which the Legislature must have used with a purpose and which seem to us to have significance. Also the Vermont court points out that the Legislature had not pointed out the proper method of ascertaining the remuneration, which left the court at liberty to ascribe to the provision a meaning which in its judgment best accorded with the general legislative intent and best carried into effect the beneficient purposes of the act. That portion of the opinion is quoted in the Klasing case. The Vermont court also pertinently said (95 Vt. l. c. 53):

" 'The value of precedents is somewhat uncertain. A slight difference in the wording of the statutes or some small variation in the circumstances may impair the value of an outside decision when attempt is made to apply it here.'

"Kelley's Dependents v. Hoosac Lumber Co., supra, is cited with approval in Livingstone Worsted Co. v. Toop, 48 R. I. 368, 138 Atl. 183; O'Bannon Corporation v. Walker, 46 R. I. 509, 129 Atl. 599; and Hauter v. Couer D'Alene Antimony Mining Co., 39 Idaho, 621, 228 Pac. 259. Those cases are also cited in the Klasing case and by respondent herein. Without taking space to distinguish them it may be said that in each there were facts and circumstances that, in

our opinion, might differentiate it on the facts from the case before us, but it may also be said that the Rhode Island cases tend to sustain the proposition that the Compensation Act should be construed with a liberality calculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class. The Idaho case quotes with apparent approval the holding in Kelley's Dependents, supra, to the effect that the exclusion clause of its statute applies only to employments for a definite term of one full year or more.

■ ''Conceding that the Compensation Law was enacted for a beneficent purpose and should be construed so as best to effectuate that purpose so far as that can legitimately be done, we must take the statute as we find it. We are not at liberty to write into it, under the guise of construction, provisions which the Legislature did not see fit to insert. Had the Legislature intended to exclude only employments under contracts for a definite term of one full year or more it could easily have said so in plain terms. If the statute needs alteration it is for the Legislature, not the courts, to make it. In our opinion the Klasing case is wrong and should not be followed on this point.''

■ ''Thus we have an opinion under review which correctly rules the question, but is in conflict with a decision of this court. In a similar situation we said: 'The proposition now is what to do with the opinion. If a Court of Appeals follows our last ruling we will not quash its opinion, although we conclude that our own is wrong; this because such court has obeyed the constitutional mandate by following our last previous rulings. But that is not the situation here. The Court of Appeals refused to follow our last expressions on the vital question, and we have concluded that they were right in so doing. If we quash their opinion for the refusal to follow the latest expressions of our court, then the case is left there for a rehearing, and upon this rehearing this opinion will be our latest ruling and they would be obligated to follow it under the Constitution. In following it, such court would have to rewrite just what it has now written. The law does not contemplate a useless act, so, concluding as we have, that our cases (latest cases) are wrong upon this vital question, the proper thing for this court is to say, as we have said, and sustain the opinion already written, which we now approve.' [State ex rel. Thomas v. Daues, 314 Mo. l. c. 32-33, 283 S. W. 51, 45 A. L. R. 1466.]'' [State ex rel. Kirby v. Trimble, 326 Mo. 675, l. c. 683, 32 S. W. (2d) 569, l. c. 572.]

It follows our writ should be quashed. It is so ordered. All concur.