BESSIE T. RUSSELL v. ELY & WALKER DRY GOODS COMPANY, a Corporation, and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, a Corporation, Appellants.—60 S. W. (2d) 44.

Division Two, April 20, 1933.

*Wm. R. Schneider* and *J. J. Cooney* for appellants.

*Thomas J. Brown, Chase Morsey* and *Dearmont, Spradling & Dalton* for respondent.

648

FITZSIMMONS, C.—This is an action under the Missouri Workmen's Compensation Law. It was stipulated that John C. Russell lost his life in an automobile accident in Cooper County, Missouri, on June 9, 1931, while he was in the service of appellant, Ely & Walker Dry Goods Company as a traveling salesman and that the accident arose out of and in the course of his employment.

Section 3305, Revised Statutes 1929, provides that the word "employee" as used in the Workmen's Compensation Law "shall not include persons whose average annual earnings exceed $3,600." The Workmen's Compensation Commission in its final award held that Mr. Russell's total earnings were $3,900 per year and therefore that he was not an employee within the meaning of Section 3305(a), Revised Statutes 1929, and there was no liability of the employer and the insurer under the Compensation Law. The dependent widow appealed to the Circuit Court of Cooper County, which court, by its judgment, reversed the award of the commission for the reason that the facts found by the commission did not support the award and that there is not sufficient competent evidence in the record to warrant the making of the award. The judgment of the circuit court accordingly remanded the cause to the commission with directions to enter an award of compensation in favor of the respondent in the amount provided by law. From this judgment of the circuit court the employer and the insurer appealed to this court. The total value of compensation claimed by respondent fixes our jurisdiction. The testimony upon the issue of the earnings of Mr. Russell was given by officers of appellant Ely & Walker Dry Goods Company and is not disputed. The finding of facts and

rulings of law of the Workmen's Compensation Commission present the matters for our decision in the following narrative:

"The deceased had worked for Ely & Walker some years prior to 1931 and after having left their employ in 1925 he resumed work for them on January 1, 1931. The contract of employment was made with James H. Jones, sales manager, and, according to Mr. Jones' testimony, the contract was briefly as follows: Mr. Russell was to have a drawing account of $300 per month commencing January 1, 1931; was to have part charge of one of their selling divisions. and was to receive such extra compensation, depending on the results in his division, as might be decided by the executive committee. This contract was not in writing, but was a verbal contract. In addition to the $300 a month he was to receive his expenses while away from home, and the sum of $597.58 was paid to Russell for said expenses. Also, on June 19, 1931, the executive committee of the Ely & Walker Dry Goods Company met and a certified copy of the minutes of said meeting indicate that one member of the committee reminded the members of the unfortunate accident resulting in Mr. Russell's death. After discussing Russell's services with the company prior to 1929 and also his contract for the year 1931, the following appears in the minutes: 'After a discussion during which Mr. Russell's hard work to build up the business in his division was commended, it was the unanimous opinion of the committee that additional compensation of $300 be paid Mr. Russell's widow for his services from January 1, 1931 to date of his death, being the practical equivalent of earnings at the rate of $4,200 per year.'

"It is the employer's and insurer's contention that the $597.58 received for expenses and the bonus or additional compensation of $300 should be included as a part of deceased's earnings, and, if this be done, his annual earnings were more than $3,600. It is the dependent's contention that neither of the above should be included and his earnings should be $3,600 per year.

"We agree with the dependent in regard to the money deceased received for expenses. Paragraph (g), Section 3320, Revised Statutes 1929, is in part as follows: '. . . but there shall not be included the wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment.' The money received for his expenses while away from home was undoubtedly a special expense entailed on him by the nature of the employment and in our opinion should not be included as a part of his earnings.

"As to the bonus of $300, after a thorough study of the contract of employment and all other evidence bearing on this point, it is our opinion that this $300 was ordered paid by the executive committee

for services rendered to Ely & Walker from January 1, 1931, to and including June 9, 1931, and was a part of deceased's earnings. Therefore, since his drawing account was $300 per month or $3,600 per year, his total earnings were $3,900 per year, and he was not an employee within the meaning of paragraph (a) of Section 3305, Revised Statutes 1929, and there is no liability of the employer and insurer under the Workmen's Compensation Law.''

Mr. James Herbert Jones, vice president and sales manager of employer Ely & Walker Dry Goods Company testified as follows concerning the compensation which the deceased John T. Russell was to receive: ''Q. If he had gotten anything in excess of $300 a month it was a matter that was to be entirely at the discretion of the executive committee? A. That's true. Q. And he had no contract during his last employment based on any percentage of commission on sales? A. No basis whatever. Q. What's the outlook for a bonus in 1931? A. I couldn't say it is so flattering, Mr. Russell.'' Mr. Golden, secretary of Ely & Walker Dry Goods Company testified concerning the bonus thus: ''Q. This bonus you spoke of there in my brother's case was left entirely up to the executive committee? A. Yes. Q. They could give him that or they could not give it to him, and he, under his contract, was not in a position to demand any bonus unless they wanted to give it to him? A. That's correct.''

■ I. Appellants urge that the circuit court erred in setting aside the award and in remanding the cause for the reason that the award of the commission was based upon findings of fact and that, under the statute (Sec. 3342, R. S. 1929) ''the findings of fact made by the commission within its power shall be conclusive and binding.'' But the same statute provides that ''the court, on appeal, shall review only questions of law.'' The commission, in the instant case made a ''finding of facts and rulings of law,'' as it entitled its official pronouncement from which we have quoted. The material questions of fact either were presented by stipulation or by the undisputed and uncontradicted testimony of two officers of the employer, supported by the evidence of its records. The commission stated the facts and thereafter it set out the legal contentions of both parties on the question of law arising out of the facts whether traveling expenses and the bonus were to be computed in the determination of the annual earnings of the deceased. The commission next made its own ruling on this question of law and it predicated its award upon that ruling. The case on the facts was an agreed one, and the questions for our decision arise out of the commission's rulings of law. Although appellants insist that the award of the commission is a conclusive and binding finding of fact, yet

upon this appeal they make a question of law of the adverse finding of the commission as to the money which the deceased received for expenses.

■ II. We are of opinion that the commission ruled rightly that under the facts in this case the sums which the employer paid to the employee for his expenses while he was away from home was a special expense entailed on him by the nature of his employment, as defined in Section 3320 (g), Revised Statutes 1929. The commission, in its ruling quoted part of paragraph (g), Section 3320, Revised Statutes 1929. To make clearer the reason for our view we quote the entire paragraph as follows: ''In computing the annual earnings there shall be included in the reasonable value of board, rent, housing, lodging and fuel received from the employer as a part of the remuneration of the employee and which can be estimated in money, and the value of gratuities customarily received by consent of the employer, in the usual course of business from persons other than the employer, but there shall not be included the wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment.''

The statute itself states that only when board, rent, housing, lodging and fuel are part of the remuneration of the employee may these items be included in the computation of his annual earnings. The record here not only fails to show that any of these items were part of the remuneration of the employee, who had a home of his own, but it does show that the expense money paid to him was a special expense entailed on him by the nature of his employment as a travelling salesman. An Iowa case cited by appellants aptly illustrates when board and lodging become part of the remuneration of an employee and also points out the difference between the including and excluding clauses of our Section 3320 (g), Revised Statutes 1929.

In the case of O'Callahan v. Dermedy, 197 Iowa, l. c. 639, 196 N. W. 10, the employee was a hotel clerk and, at the time of his injury, he was receiving $50 cash per month and his room and board at the hotel in which he performed the services for which he was hired. The Industrial Commissioner, in computing compensation, allowed $40 per month for room and board as part of the employee's annual earnings. The employer, upon appeal, contended that annual earnings should be computed only on a basis of cash wages. The Supreme Court of Iowa, in ruling this point against the employer, said (196 N. W. l. c. 13): ''The Workmen's Compensation Act, providing that the compensation shall be computed on the basis of the annual earnings of the employee 'as salary, wages, or earnings,' is sufficiently broad and comprehensive to include board and lodging that are

furnished to the employee under the contract of hiring as a part of the compensation. The clause in Section 2477m15g that the earnings shall not include a sum which the employer has been accustomed to pay the employee to cover any special expenses entailed on him by the nature of the employment is not a limitation upon the earnings of an employee who regularly receives board and lodging as a part of the compensation for his services."

III. We do not agree with the ruling of the commission that the sum of $300 which the executive committee of Ely & Walker Dry Goods Company ordered paid to Mr. Russell's widow on June 19, 1931, ten days after his death, was part of his earnings, and that this payment took Mr. Russell out of the class of employees who are within the jurisdiction of the Compensation Law. Section 3305 (a), Revised Statutes 1929, provides in part: "The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, but shall not include persons whose average annual earnings exceed three thousand six hundred dollars." Since, under Section 3304 (b), the word "employer" includes the State and any county, municipal corporation, township, city and other kinds of political subdivisions which may elect to accept the Compensation Law, we may assume that the words "under any appointment or election," used in Section 3305 (a) refers to employees of the State or of any political subdivision that may accept the law. If, therefore, we limit the definition of "employee" in Section 3305 (a) to private businesses, we may add to the excluding clause of that section certain words expressed in the including clause and implied in the excluding clause thus: "but (the word 'employee') shall not include persons whose average annual earnings (under any contract of hire, express or implied, oral or written) exceed three thousand six hundred dollars." Mr. Russell's annual salary, under his oral contract of hire, at the rate of $300 per month, was $3600, the limit fixed for employees included in the Workmen's Compensation Law. The testimony of Mr. Jones, vice president and general sales manager of the employer, Ely & Walker Dry Goods Company, the official who employed Mr. Russell, and of Mr. Golden, secretary of the company, discloses that if Mr. Russell was to get anything in excess of $300 per month, in the year 1931, it was a matter resting entirely in the discretion of the executive committee of the employer; that, under the contract of employment, Mr. Russell could not demand any bonus; that the contract of employment was not based on any percentage or commission on sales; that the outlook for a bonus in 1931 was not. "so flattering." Mr.

Jones and Mr. Golden testified before a referee of the Workmen's Compensation Commission on November 2, 1931, and the bonus outlook to which reference was made was for the fiscal year ending November 30, 1931. The inference is strong that, had Mr. Russell lived and worked, his outlook for a bonus, resting in the uncontrolled discretion of the executive committee, would not have been flattering in the latter part of 1931.

In these circumstances, should the action of the executive committee of the employer deprive Mr. Russell's widow of the benefits of the Workmen's Compensation Law, to which she would have been entitled but for that action? We do not think so. Mr. Russell's employment was under an oral contract, by which, in consideration of his services he was to receive $300 a month salary. As to the arrangement with Mr. Russell concerning a bonus, Mr. Jones, the vice president and sales manager of the employer, testified: ''Q. This arrangement you had with Mr. Russell with reference to bonus, just what was there about that? A. The arrangement we had with Mr. Russell—we have been trying to get away from the commission basis for the division men, because it sometimes is misleading and sometimes disappointing, because we have to set a mark so high a man thinks he cannot reach it—so with Mr. Russell, I said, 'John, if I give you a basis I would have to raise the amount you have to sell at such a high figure it would be disappointing to you, but everybody appreciates your work and if you would leave that to us I assure you you will be treated fairly.' In fact, our city division has the same basis, so much each year depending on sales. Q. Would you say you could eliminate the bonus entirely? Couldn't you cut him out entirely and not give him anything? A. No bonus? Q. Yes. A. Yes, under these arrangements, depending on the year. Q. What were the results for the half year, approximately half year? A. I would say the results, and knowing conditions, were very good, because Mr. Russell was a good man, because the conditions of the country as a whole were very bad. Q. Was there anything in your arrangement that would have warranted the declaration of a bonus to Mr. Russell had he continued in your employ? A. The only reason was we had always paid him more before than when he was there this time.'' And Mr. E. M. Golden, secretary of the employer company, when asked whether the three hundred dollars per month which was paid to Mr. Russell was salary or a drawing account against commission, answered that in Mr. Russell's case, in the absence of a full year upon which his earnings might be based, the payment of $300 per month, in the eyes of the executive committee, was ''about what it should have been.''

We have seen that the persons excluded from the benefits of the Compensation Law are those whose average annual earnings under

any contract of hire, express or implied, oral or written, exceed $3,600. Mr. Russell, under his contract, was not entitled to the gratuity of $300 which the executive committee of the employer granted to his widow in these words: "It was the unanimous opinion of the committee that additional compensation of $300 be paid Mr. Russell's widow for his services from January 1, 1931, to date of his death, being the practical equivalent of earnings at the rate of $4,200 per year." And since Mr. Russell did not have a lawful right to that additional sum, the payment of it to his widow should not exclude her from the operation of the Workmen's Compensation Law.

IV. The judgment of the circuit court, as we have stated, remanded the cause to the commission with directions to enter an award of compensation in favor of the respondent in the amount provided by law. In the case of Schulz v. Great Atlantic & Pacific Tea Company, 331 Mo. 616, 56 S. W. (2d) 126, the circuit court in like manner reversed the order of the commission and remanded the cause for rehearing with directions to award compensation. We held in that case that under Section 44 of the Compensation Act, Laws 1927, page 512 (Mo. Stat. Annotated, sec. 3342), the judgment of the circuit court should be modified by striking out the provision directing the commission to award compensation. Consistently we should in the instant case hold that the judgment of the circuit court should be modified by striking out the provision directing the commission to enter an award of compensation in favor of the respondent in the amount provided by law.

As modified, the judgment of the circuit court is affirmed and the cause remanded with directions to the commission for rehearing; the commission to make such orders or awards as it deems proper and which are not inconsistent with this opinion. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.