413 So.2d 816 (1982)
VIKING SPRINKLER COMPANY and Lumbermens Mutual Casualty Company, Appellants,
v.
Martin J. THOMAS, Appellee.
No. AF-98.
District Court of Appeal of Florida, First District.
May 5, 1982.
Steven A. Rissman, Cooper & Rissman, Orlando, for appellants.
Stephen J. Wein, Battaglia, Ross, Hastings, Dicus & Campbell and Donald C. Anderson, St. Petersburg, for appellee.
LARRY G. SMITH, Judge.
The employer/carrier appeal issues relating to determination of average weekly wage, and the award of rehabilitation benefits. Appellants maintain that the deputy commissioner erroneously included a $90.00 weekly expense allowance in his computation of average weekly wage, and that he erroneously approved rehabilitation in the form of a machine-shop training course for claimant, as opposed to "specialized job placement" services offered by the E/C. We affirm.
The claimant, 32-years of age, sustained a compensable accident while employed as a pipe fitter, when a pipe broke loose from a wall, struck him in the face, and caused him to fall from a ladder onto the floor about twenty-five feet below. He sustained numerous injuries, those of lasting significance being two compression fractures of the lumbar vertebrae. After medical care he was discharged with instructions that he should be capable of light work, without heavy lifting. He was assigned a 10% permanent partial disability of the body as a whole.
*817 As above noted, the deputy commissioner found that the $90.00 weekly expense allowance received by claimant was properly considered as a part of his weekly wages. The evidence discloses that the additional sum was paid while the claimant was away from Tampa, which was "all the time," according to his testimony. This additional sum was paid for daily living expenses, including room and meals, and partly for mileage. No accounting for these expenses, nor the expenditure of the $90.00 weekly allowance, was required. The same amount was paid to each employee, regardless of whether he drove his own vehicle or rode in another employee's vehicle. An employee driving his own truck and carrying materials was paid extra for the use of the truck. We conclude that the deputy commissioner's treatment of the expense allowance comports with the statutory definition of "wages" found in Section 440.02(12), Florida Statutes (1979).
Turning next to the rehabilitation issue, we observe initially that the E/C admit their responsibility under Section 440.49, Florida Statutes (1979), to provide rehabilitation, and to provide it quickly. However, they assert that they discharged this duty by employing a private rehabilitation counselling firm to place the claimant in suitable employment as soon as possible. The E/C argue that this offer of "specialized job placement," which one of their experts defined as placement in employment that is appropriate, "depending on the limitations or specific needs of the employee," is the equivalent of "rehabilitation" under the statute. They contend also that the method of rehabilitation chosen by the E/C should prevail over the desires of the claimant to obtain training qualifying him for a higher level occupation than he would be qualified for without training. Finally, the E/C contend that the E/C should have the right of choice in selection of the rehabilitation program they consider to be appropriate for the claimant, and the right to select the rehabilitation service or facility through which rehabilitation will be provided. In this connection they analogize the selection of rehabilitation programs and providers with the selection of medical care providers, and they argue that the E/C should have the same right of "first choice" in rehabilitation matters.
We decline to adopt the E/C's views regarding rehabilitation, with exception of their acknowledgement of their obligation to provide it, because these views, as above outlined, are fundamentally at odds with the concept of "rehabilitation" as we think it is envisioned by Florida's workers' compensation law. The statute (Section 440.49(1)(a)), requires the E/C to provide rehabilitation in the form of "appropriate training and education," and it speaks further of "vocational education," and "vocational rehabilitation" of injured employees. Subsection (c) of Section 440.49(1) makes further reference to "appropriate training or education," and subsection (d) provides for "proper rehabilitation services" to be extended over a period of twenty-six to fifty-two weeks. Therefore, although we do not demean the carrier's prompt action in assigning a vocational rehabilitation counselling firm to work with the claimant, we cannot accept the notion that a "specialized job placement" service is synonymous with rehabilitation. Finding a job for an injured worker, however helpful and beneficial, cannot be equated with "training and education."
Furthermore, finding a suitable job presupposses the existence, upon the claimant's part, of the ability to obtain and perform employment providing an income "equal to" his pre-injury earnings. Section 440.49(1)(a). If the claimant has such ability, then rehabilitation would be unnecessary.
The evidence before the deputy commissioner focused upon the necessity for, and the suitability of the rehabilitative program undertaken by the claimant. The E/C's rehabilitation experts testified that claimant was not in need of rehabilitation, and it is clear both from the E/C's argument here and from the testimony below, that the E/C did not offer "rehabilitation." The rehabilitation and counselling firm employed by the E/C was assigned for the *818 purpose of providing specialized job placement, rather than rehabilitation. Despite this limitation in the assignment, upon the claimant's initial contact with the rehabilitation counsellors employed by the E/C he was told to contact Pinellas Vocational-Technical Institute (PVTI) to see if he could qualify for the machine-shop training course, which he did, and was accepted. Some sixty days after the claimant's initial contact with the E/C's rehabilitation counsellors, one of the counsellors visited the claimant's home, to discuss with him the prospects for his acceptance of the "specialized job placement" service offered by the carrier, rather than the course of rehabilitative training undertaken by the claimant.[1] When the claimant declined such specialized job placement service, and expressed his desire to continue in the rehabilitative training program he had already undertaken at PVTI, no further action was taken by the counselling firm. No job was actually located for the claimant. Although one of the counsellors employed by the E/C testified that in his opinion he could have located a job for the claimant paying $200.00 per week, or even $245.00 per week, he doubted that he would be able to obtain employment for the claimant at $290.00 per week, the amount of claimant's pre-injury wages when his $200.00 base pay and the expense allowance are combined. Further support of the necessity for rehabilitation is found in the claimant's testimony concerning his unsuccessful job search conducted prior to his enrollment at PVTI. Appellants have failed to demonstrate error in the deputy commissioner's finding that the claimant's injury would preclude him from earning wages equal to the wages earned prior to the injury.
As for the suitability of the machine-shop rehabilitative training program, we observe that the rehabilitation specialists for both sides reviewed the claimant's medical reports and administered an impressive battery of tests relating to the claimant's vocational aptitude and abilities.[2] There was agreement by the experts on both sides that the machine-shop training program was appropriate for the claimant. Thus, the deputy commissioner had before him ample evidence upon which to base his determination as to the suitability of the rehabilitative program.
Finally, with respect to the E/C's assertion of a right of "first choice" in the selection of rehabilitative providers and programs for the claimant, we fail to find any basis for the assertion of such a right in the statute or in the uses and purposes it is designed to serve. Among the statutory rights conferred upon the E/C is definitely not included the right to choose, in behalf of the injured claimant, the occupation to be followed by him when his own freedom of choice and ability to perform a job have been impaired as a result of an industrial accident. As the evidence in this case amply demonstrates, the choice of suitable employment for an injured employee involves many factors, not the least of which are the employee's aptitude, interest, desire, or "motivation" to engage in a certain type of work. The same rationale was employed by this court in Walker v. New Fern Restorium, 409 So.2d 1201 (Fla. 1st DCA 1982), and expressed in the court's admonition (409 So.2d at 1203, 1204): "To refuse rehabilitation benefits because of the availability of any employment, no matter how ill-suited to the particular individual, would be counter to the statutorily expressed goal of rehabilitation *819  to return the individual to `suitable gainful employment.'" Should this court agree that the E/C is entitled to furnish its own form of "rehabilitation," if this case may be used as an example, rehabilitation would soon become more of a myth than a reality.
The order appealed is AFFIRMED.
MILLS and SHAW, JJ., concur.
NOTES
[1] The deputy commissioner in his order made specific reference to this lapse of sixty days "between effective contacts of the rehabilitation specialists." In fairness, we surmise that this undue delay was attributable, at least in part, to the fact that the counsellor with whom the claimant initially consulted left the firm shortly after the interview with the claimant.
[2] The experts testifying for both sides were shown to be well-qualified. The claimant's expert witness, Dr. Harold H. Smith, Jr., for example, is the holder of a Doctor of Philosophy Degree in Clinical Psychology, has special training in the area of rehabilitative testing, and has provided rehabilitative services to the Department of Health and Rehabilitation and Vocational Rehabilitation, in addition to his private practice in the fields of psychology and vocational rehabilitation.