John A. GRIMES, Respondent/Cross–Appellant,

v.

GAB BUSINESS SERVICES, INC. Appellant/Cross–Respondent,

and

Transport Insurance Company c/o GAB Business Services, Inc., Appellant/Cross–Respondent,

Additional Party: Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.

Nos. 74138, 74160.

Missouri Court of Appeals, Eastern District, Division Two.

April 6, 1999.

Robert W. Haeckel, St. Louis, for appellant.

James M. Martin, St. Louis, for John A. Grimes.

Jeremiah (Jay) Nixon, Atty. Gen., Jefferson City, Elizabeth J. Ituarte, St. Louis, for Treasurer, State of Missouri, as custodian of the Second Injury fund.

CRAHAN, Judge.

John A. Grimes ("Employee") and GAB Business Services ("Employer") cross appeal the Labor and Industrial Commission's award of permanent partial disability benefits of 50% at the cervical spine, 30% permanent partial disability at the left elbow and temporary permanent disability through March 28, 1996. Employer appeals the inclusion of "per diem" expenses as part of the wage rate and the duration of the temporary total disability. Employee appeals the denial of future medical care, the denial of permanent total disability and the denial of attorney's fees and costs. We affirm in part and reverse and remand in part.

### Background

Employee was hired by Employer as an adjuster for special catastrophe storm duty on September 1, 1992. Employee's job entailed inspecting storm damage in Miami, Florida following Hurricane Andrew.

Employee had originally been told by telephone that he would be working as a subcontractor and that his rate of pay would be 60% of the amount Employer would bill as a result of his work, or 60% of $66 an hour. When Employee arrived in Florida, however, his superiors told him he would have to start as a temporary adjuster ("TA") at a lesser rate of pay because they weren't sure of his level of experience. As a TA, Employee was paid a fixed daily rate of $165 based on a $95 per day salary, a $65 daily per diem expense allowance, and a $5 per day special expense for mileage. Employee testified that the $65 daily per diem was paid by separate check by the managers at the catastrophe site and was not subject to withholding for federal taxes. Employee viewed the lack of withholding as an incentive to get him to accept the daily rate of payment. He also testified that the per diem amount was not reimbursement, but was actually a part of the earnings package. However, Employee conceded that the per diem rate was to cover his room and board while he was in Florida and that his expenses always exceeded his per diem allowance.

On September 10, 1992, Employee was inspecting storm damage when a ladder he was descending slipped. Employee fell approximately 9 to 10 feet to the ground and was injured. Employee returned to St. Louis and filed a claim for compensation with the Division of Worker's Compensation. Employee alleged injuries to the left elbow, numbness in the neck, and pain in both hands and wrists as a result of the fall.

The ALJ found Employee had a temporary total disability through March 28, 1996. He found that Employee has a 50% permanent partial disability of the man as a whole and 30% permanent partial disability of the left elbow. He calculated Employee's compensation rate using both the $95 per day salary and the $65 per diem allowance, finding the per diem expense rate to be part of "gross wages" rather than a "special expense." He also found that Employee had an ongoing need for medication and awarded future medical care. He denied an unsubstantiated request for expenses related to transporting personal belongings as well as unspecified past medical expenses. The ALJ also denied Employee's unsubstantiated, unspecified claims for cost of recovery that were not brought up at the hearing. Both Employee and Employer appealed portions of the award.

The Commission reviewed the evidence pursuant to section 287.480 and modified, in part, the award and decision of the ALJ. The Commission affirmed the permanent partial disability award and the ALJ's finding on the compensation rate, which included the per diem payment in the computation of temporary total disability payments. The Commission also affirmed the ALJ's finding of additional temporary total disability between December 5, 1995 and March 28, 1996. However, the Commission reversed the ALJ's decision regarding future medical care and denied future care.

On appeal, Employer argues that the Commission erred in including a per diem expense allowance as part of the wage rate and erred in allowing temporary total disability from December 4, 1995 through March 28, 1996. Employee argues the Commission erred in holding that he was not entitled to future medical care, in failing to enter an award of permanent total disability, and in failing to award attorney's fees, costs of collection and expenses incurred.

### Standard of Review

The Commission is the ultimate trier of fact in a Workers' Compensation case. It is the sole judge of the weight of the evidence and credibility of the witnesses. *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119 (Mo.banc 1965). This Court reviews the record in a light most favorable to the findings and award of the Commission and views the evidence upon which the Commission made its award in a light most favorable to the successful party below. *Johnson v. Simpson Oil Co.,* 394 S.W.2d 91 (Mo.App.1965). This Court must affirm the decision of the Commission if it is supported by competent and substantial evidence upon the whole record and may set aside the award only if it is clearly contrary to the overwhelming weight of the evidence. *Williams v. S.N. Long Warehouse Co.,* 426 S.W.2d 725, 733 (Mo. App.1968).

### Discussion

■ Employer first argues that the Commission erred in including the $65 per diem expense allowance as part of Employee's salary because this award is based upon a misinterpretation or misapplication of law under section 287.250.2 RSMo 1992. Section 287.250.2 provides:

2. For purposes of this section, the term "gross wages" includes, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging or similar advance received from the employer, except if such benefits continue to be provided during the period of the disability, then the value of such benefits shall not be considered in calculating the average weekly wage of the employee. The term "wages", as used in this section, includes the value of any gratuities received in the course of employment from persons other than the employer to the extent that such gratuities are reported for income tax purposes. "Wages", as used in this section, does not include fringe benefits such as retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan furnished by the employer for the benefit of the employee. Any wages paid to helpers or any money paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of his employment shall not be included in wage.

Employer argues that the proper interpretation of section 287.250.2 mandates that a per diem allowance for an out of town special temporary storm duty adjuster must be considered as "special expenses incurred by employee because of the nature of his employment," and thus, it must be excluded from gross wage computation for rate determination.

In his findings of fact and conclusions of law, the ALJ acknowledged the general rule that amounts paid as reimbursement of travel expenses incurred while on company business generally are not included in the calculation of "gross wages" pursuant to section 287.250.2 RSMo 1994. *Russell v. Ely & Walker Dry Goods Co.,* 332 Mo. 645, 60 S.W.2d 44, 45–46 (1933); *Newman v. Rice–Stix Dry Goods Co.,* 335 Mo. 572, 73 S.W.2d 264, 269–70 (1934). However, noting that Employer did not require an accounting as to the amount of expense incurred by Employee, the ALJ determined that the per diem payment was more like an advance similar to the provision of board and lodging than a special expense. The full amount of the per diem payment was therefore included in the calculation of the average weekly wage. In affirming this aspect of the award, the Commission found that inclusion of the per diem payments in the calculation of the average weekly wage was consistent with Professor Larson's view as expressed in his treatise on workers' compensation at section 60.12(a): "In computing actual earnings as the begin-

ning of wage point of wage basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee." 2 Larson's Workmen's Compensation Law, Sec. 60.12(a) (1969).

Examination of the cases cited by Professor Larson establishes that the quotation relied upon by the Commission is a correct statement of the applicable principle but the principle has been misapplied to the facts of this case. Perhaps the most widely cited authority for the principle set forth in Professor Larson's treatise is *Moorehead v. Industrial Commission,* 17 Ariz.App. 96, 495 P.2d 866 (1972). In *Moorehead,* a union contract called for payment of an expense allowance on a graduated scale based on the distance between the workman's city of residence and the construction site. *Id.* at 867. The evidence at the hearing established that the injured employee's actual expenses exceeded the allowance paid pursuant to the union contract. *Id.* at 868. The Industrial Commission excluded the travel expense allowance on the ground that it did not constitute a real economic gain to the employee. *Id.* The Arizona Court of Appeals affirmed. After analyzing various Arizona decisions on the subject, the court summarized its holding as follows:

> We think the principle to be derived from the foregoing is that "wages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

*Id.* at 869. Although the court observed that cases from other jurisdictions were not very helpful due to variances in the statutes, it did find that its holding was consistent with the general rule stated in Am.Jur. Workmen's Compensation, Sec. 310, p. 769, which it quoted in its opinion:

> As a general rule, however, amounts paid an employee as reimbursements for expenditures he is called upon to make in the course of his employment, in activities which he has no occasion to pursue when not employed, are not part of his earnings for the purpose of fixing workmen's compensation.

*Id.* at 870. *See also Layne Atlantic Co. v. Scott,* 415 So.2d 837, 838–39 (Fla.App.1982); *Stahl v. Southeastern X-Ray,* 427 So.2d 1089, 1090 (Fla.App.1983); *Blake Stevens Construction v. Henion,* 697 P.2d 230, 232 (Utah 1985); *Gonzales v. Mountain States Mut. Cas. Co.,* 105 N.M. 100, 728 P.2d 1369, 1372 (App.1986); *Solheim v. Hastings Housing Co.,* 151 Neb. 264, 37 N.W.2d 212, 221–22 (1949).

*Layne Atlantic Co. v. Scott, supra,* is particularly instructive. The issue presented was whether out of town vehicle and motel expenses should be included in computing the claimant's average weekly wage. A different panel of the same court had, without extended analysis, recently allowed a weekly expense allowance to be included in the calculation. *Viking Sprinkler Co. v. Thomas,* 413 So.2d 816 (Fla.App.1982). Although the court distinguished *Viking Sprinkler* as containing evidence of an independent personal benefit to the employee, the court further observed:

> We must not lose sight of the reason for determining average weekly wage, which is to eventually measure the economic loss a worker experiences when he suffers "loss of wage earning capacity" or "wage loss" as those terms of art are statutorily defined. If an employer stops helping an employee meet his personal expenses, the employee has suffered an economic loss. Obviously this occurs when the employee loses his job and paycheck; more subtly, it may occur when an employer no longer provides clothing worn at work. However, if an employer no longer makes certain expense payments because the employee

no longer incurs those expenses the employee has suffered no economic loss.

415 So.2d at 838. The court held that out of town motel expenses should not have been included and remanded the case for a determination of whether the employer provided vehicle was solely a work related expense. Subsequent Florida decisions have followed *Layne Atlantic* and not *Viking Sprinkler.*[1] *See, e.g., Stahl v. Southeastern X–Ray, supra.*

The few Missouri cases addressing the issue have not used the "real economic gain" analysis but are nonetheless consistent with it. In *Russell v. Ely & Walker Dry Goods Co., supra,* the court held that expense reimbursements paid to an employee in connection with out of town travel were not part of his remuneration as a traveling salesman. 60 S.W.2d at 46. Rather, the expense money was, in the then language of the statute, a "special expense entailed on him by the nature of his employment as a traveling salesman." *Id.*[2] Likewise, in *Newman v. Rice–Stix Dry Goods Co., supra,* the Missouri Supreme Court construed the forerunner of section 287.250.2 as follows:

> Paragraph (g) provides that the value of "board rent housing, lodging and fuel received from the employer as part of the remuneration of the employee" is to be included as earnings. Those are ordinary or general living expenses which every person, whether employed or not, necessarily incurs. They cannot be said to be entailed on any employee by the nature of his employment. The statute expressly provides that there shall not be included "the wages of helpers or any sums the employer paid to the employee to cover any special expenses entailed on him by the nature of his employment. Sums so

paid to or for an employee do not go to the support of him or his dependents."

73 S.W.2d at 270. The court held that employer-paid reimbursement of expenses incurred during out of town travel such as hotel bills, railroad or bus fares, sample rooms and postage were special expenses entailed on the employee by reason of his employment and thus were not to be included in the calculation of his "wages."

The only Missouri case which allowed an expense allowance to be included in the computation of earnings was *Goetz v. JD Carson Co.,* 357 Mo. 125, 206 S.W.2d 530, 535 (1947). In that case the employee was paid a standard car allowance even though his employer knew the employee did not have an operable vehicle and was performing his duties on foot. The allowance was thus held to be properly included in the calculation of his average weekly wage because no expense of using an automobile had actually been entailed upon the employee by virtue of his employment.

■ Although the exclusion of special expenses incurred because of the nature of the employment essentially embodies the "real economic gain" test advanced by Professor Larson and utilized in other states, it is ultimately the language of section 287.250.2 RSMo 1994 that controls. In this case Employee acknowledged that the per diem payment was to cover his expenses for room and board while working at the catastrophe site in Florida-*i.e.,* expenses that would not have been incurred but for his employment. Although the ALJ found it significant that Employee was not required to provide Employer with an accounting of how he spent the money, this feature of the arrangement simply raised the possibility that the payment might exceed the actual expenses incurred, thus resulting in a real economic gain to the Employee.[3] It is Employee who bears the bur-

---

1. Aside from the absence of any extended analysis articulating a cogent rationale for its holding, the precedential value of *Viking Sprinkler* is further diminished in this case because the Florida definition of wages has no provision comparable to the last sentence of section 287.250.2. *See* West's Fla. Stat. Ann. Sec. 440.02(27).

2. As an illustration of a situation in which board and lodging *would* be part of the employee's remuneration and thus includable in wages, the

court in *Russell* cited *O'Callahan v. Dermedy,* 197 Iowa 632, 196 N.W. 10, 13–14 (1924) (Room and board provided to hotel desk clerk as part of his compensation properly included in wages).

3. The fact that Employer did not withhold federal taxes on the per diem payment further suggests that no real economic gain was contemplated.

den of proving all material elements of his claim, including the proper compensation rate. *Sanders v. St. Clair Corp.,* 943 S.W.2d 12, 18 (Mo.App.1997). Although we would be inclined to hold that any payment in excess of the actual expenses incurred because of the nature of the employment should be included in the calculation of the average weekly wage, Employee himself testified that his expenses consistently exceeded the amount of the per diem payment. The payments therefore did not result in any real economic gain.[4]

On this record, we hold that the Commission erred in including the per diem payments in the calculation of employee's average weekly wage. Employer states that this error only affects the calculation of Employee's temporary total disability payments. Accordingly, we reverse the award of temporary total disability payments and remand for recalculation of the award consistent with this opinion.

■ Employer next argues that the Commission erred in allowing "additional unsubstantiated" temporary total disability from December 4, 1995 through March 28, 1996. Employer alleges the Commission's decision is not based upon any competent substantial evidence and is against the overwhelming weight of the evidence. We disagree.

Both the ALJ and the Commission found the testimony of Dr. Krettek, Employee's treating physician, to be more credible than the testimony of other physicians who had examined Employee. Dr. Krettek testified that he last examined Employee on March 28, 1996, and determined that he had reached maximum medical improvement. It is clear from the record that the Commission based the award on substantial competent evidence. As the Commission stated in its award, "[w]hen medical theories conflict, deciding which to accept is an issue peculiarly for determination of the Labor and Industrial Relations Commission." *Hawkins v. Emerson Electric Co.,* 676 S.W.2d 872, 877 (Mo. App. S.D.1984). We affirm Commission's award of temporary total disability until March 28, 1996.

### Cross–Appeal

On cross-appeal, Employee argues the Commission erred in its finding that he is not entitled to future medical care, in failing to enter an award of permanent total disability, and in failing to award him attorney's fees and costs.

■ The first two issues raised by Employee are questions of fact. The Commission is the sole judge of the weight of the evidence and credibility of the witnesses, and this Court has no jurisdiction to make findings of fact since that jurisdiction lies with the Commission and their findings are conclusive. *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119 (Mo. banc 1965). We therefore affirm the Commission's award.

The third issue raised by Employee was not properly raised before the ALJ. In his Findings of Fact and Rulings of Law, adopted by the Commission, the ALJ stated: "At hearing the claimant failed to identify costs as one of the issues to be resolved in this matter. That having been said, it is further noted that the claimant failed to make any proof as to those costs. The issue as to costs is found in favor of the employer/insurer." We affirm the Commission's decision not to award fees and costs.

---

4. The dissent suggests that amounts Employee spent on food should be included in wages since Employee would have to eat anyway and reimbursement would therefor constitute a net economic benefit. Logically, this would apply to direct reimbursement for meals as well as expenditures of per diem payments. We disagree that reimbursement for meals consumed on out-of-town business should be included in wages. Although there is arguably an economic benefit to the employee in the amount of what he would have spent to eat at home, this theoretical benefit is *de minimis* compared with the increased expense of being forced to eat in a restaurant.

The effort to calculate the minimal net economic benefit and include it as part of wages would become a burden in many, if not most compensation cases because nearly all employers reimburse for out of town meals. Moreover, we note that this was not the basis for the Commission's ruling. Indeed, the Commission has long excluded reimbursement for meals consumed on out of town business from the wage calculation. *See McClintock v. Skelly Oil Co.,* 232 Mo.App. 1204, 114 S.W.2d 181, 185–86 (1938) (Affirming order excluding reimbursed food and hotel expenses from wage calculation.)

The award of temporary total disability benefits is reversed and remanded for recalculation of the amount of the award consistent with this opinion. In all other respects the award is affirmed.

JAMES R. DOWD, P.J., Concurs.

RICHARD B. TEITELMAN, J., Dissents in Separate Opinion.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent from the majority holding on Employer's first issue on appeal, and would instead remand the issue to the Commission for a further factual determination.

The issue upon which I differ with the majority involves the nature of a per diem expense allowance and whether that amount is appropriately included as part of Employee's gross income. Though I generally agree with the majority that amounts paid for "special expenses" should not be included as part of Employee's income, I respectfully disagree with the majority's holding that the entire per diem amount was paid to Employee to cover such expenses and that it should thus be excluded.

I find it significant that Employer did not reimburse Employee for his actual expenses. Rather, Employer paid Employee a per diem expense allowance and did not require any proof as to actual expenses. To the extent that Employer did not require an accounting as to the expenses and paid a flat daily rate for incidental living expenses, such an arrangement more closely resembles a bargained-for wage for services rendered than an agreement for the payment of special expenses. Moreover, I do not believe that all of the expenses the per diem amount provided for were special expenses.

In *Newman v. Rice–Stix Dry Goods Co.*, 335 Mo. 572, 73 S.W.2d 264, 270 (1934), the Missouri Supreme Court discussed the difference between the value of "board, rent, housing, lodging and fuel" and "special expenses." "Board, rent, housing, lodging and fuel" are described as "ordinary or general living expenses which every person, whether employed or not, necessarily incurs." "Special expenses," on the other hand, are incurred because of the nature of the employment. In a case such as this where a per diem amount is paid to an employee for his room, board and living expenses such as laundry while he travels on business, the expenses meant to be covered by the per diem include both "ordinary or general living expenses" and "special expenses." While it is true that Employee would not have incurred hotel expenses if he had not been working for Employer in Florida, he certainly would have incurred meal and laundry expenses wherever he was.

An almost identical fact scenario and issue were present in *Viking Sprinkler Company v. Thomas*, 413 So.2d 816 (Fla.App. Dist. 1 1982). In that case, the claimant was paid a $90 weekly expense allowance while he was out of town. The allowance was paid for daily living expenses, including room and meals, and partly for mileage, and no accounting for these expenses or for the expenditure of the allowance was required. The Florida court found the allowance to be part of the claimant's wages. *Id.* at 817. In a later decision, the Florida court examined a similar issue and held that a "dollar-for-dollar reimbursement for an away-from-home motel room satisfies a need that would not exist but for the idiosyncrasies of work, so it cannot be considered as 'wages.'" *Layne Atlantic Co. v. Scott*, 415 So.2d 837, 839 (Fla.App. Dist. 1 1982). The court also said, however, that items such as meals and uniforms satisfy independent personal needs for food and clothing and thereby qualify as "wages." The court distinguished *Viking Sprinkler*, stating "[t]here, the uniformity and regularity of the expense payments coupled with the employee's broad discretionary ability in putting the money to use was sufficient evidence from which the deputy could conclude that the allowance was not a bona fide make-whole reimbursement and that the employee had received independent personal benefit."[1]

---

1. Though the Florida workers' compensation law does not provide a distinction for amounts paid to cover "special expenses," Florida courts do seem to embody Professor Larson's "real eco-

Workers' compensation provisions are to be liberally construed with a view to public welfare. *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo.banc 1995). Accordingly, we resolve all doubts in favor of the employee. *Schuster v. State Division of Employment Security*, 972 S.W.2d 377, 381 (Mo.App. E.D.1998) (citing *Cook v. Sunnen Products Corp.*, 937 S.W.2d 221 (Mo.App. E.D.1996)).

While the amount Employee spent on his hotel expense in this case arguably should not be included as part of his wages, the amount he spent on meals, laundry and other expenses that were not "special expenses" related to his job should be included. The record does not reflect what Employee's exact expenses were, only that his expenses exceeded his allowance. Therefore, I disagree with the disallowance of the per diem amount as a whole because the record does not support a finding that the per diem amount only paid for hotel expenses. Rather, a reasonable inference drawn from viewing the facts in a light most favorable to the Commission's Award is that the per diem amount most certainly was spent on more than a single expense.

For that reason, I would remand this issue to the Commission for further findings of fact. Though it is possible that Employee spent $65 per day on his hotel expenses, it is more likely that part of the per diem amount provided a real economic gain to him, especially considering that the per diem amount

nomic gain" test in determining which amounts to include as wages.

2. I would not rely on the fact that Employer did not withhold taxes from the per diem allowance because the record does not contain information from which we can determine whether or not Employer acted properly when it did not withhold tax, and the taxation issue is not before us.

3. Section 287.250.4 RSMo 1994 provides:

  If pursuant to this section the average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of this section, the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commission, based upon the exceptional facts presented, fairly determine such employee's average weekly wage.

was not a dollar for dollar reimbursement and Employee had absolute discretion in spending the money.[2] The Commission, as finder of fact, should make that determination. I would afford broad deference to the Commission in determining what is appropriate and fair on issues of compensation.[3]

I fully concur in the well-reasoned analysis of the majority opinion regarding Employer's remaining issue on appeal and Employee's cross appeal.

Had the Commission determined that the inclusion of the entire amount of the per diem expense allowance would be fair and just, instead of including the per diem amount as a "similar advance," I would affirm the entire Award. The facts in this case could warrant a finding that the per diem amount should be included as a matter or fairness to Employee.

Employee was lured to Florida for a job with a promised pay much higher than that which Employer was willing to pay once Employee reached Florida to start work. Employee took the job anyway, accepting the lower pay in the form of $95 in salary, $65 in per diem expense allowance, and $5 special travel expense allowance per day. Employee testified that both the $95 and the $65 that he was paid per day were part of his salary. Moreover, Employer acted as though the per diem amount was part of Employee's wages when it required no accounting of the manner in which Employee spent the funds.