Winfred **CALDWELL**, Deceased, **Lynda Lorenz Caldwell** and **Samuel Caldwell**, Claimants–Respondents,

v.

**DELTA EXPRESS, INC.,** and **American Home Assurance,** c/o **AIG Claims Services, Inc.,** Employer/Insurer–Appellants.

No. SD 29473.

Missouri Court of Appeals, Southern District, Division Two.

March 19, 2009.

---

**1.** Father's Motion to Strike the appendix attached to Mother's Reply Brief is granted.

**252**

Jay C. Lory, St. Louis, for Appellants.

Chris N. Weiss, Jackson, for Respondent Lynda Lorenz Caldwell.

Michael Moroni, Bloomfield, for Respondent Samuel Caldwell.

NANCY STEFFEN RAHMEYER, Judge.

Winfred Caldwell ("Employee") died as a result of an accident arising out of and in the scope of his employment with Delta Express, Inc. ("Employer"). His wife, Lynda Lorenz Caldwell, and his disabled son, Samuel Caldwell (collectively "Respondents"), brought a workers' compensation claim against Employer and American Home Assurance C/O AIG Claims Services, Inc. (collectively "Appellants"). The Labor and Industrial Relations Commission ("the Commission") included per diem payments with the Employee's average weekly wage and resultant death benefits. Appellants claim the inclusion of the per diem payments was error. We disagree, find no error, and affirm the Commission's findings and award.

Where, as here, the award and decision of the Administrative Law Judge ("ALJ") is attached and incorporated by reference by the Commission, this Court considers the findings and conclusions of the Commission as including the ALJ's award. *Henley v. Fair Grove R–10 School Dist.*, 253 S.W.3d 115, 126 (Mo.App. S.D. 2008). Upon review, we may modify, reverse, remand for rehearing or set aside the Commission's award only if we determine that the Commission acted without or in excess of its powers; that the award was procured by fraud; that the facts found by the Commission do not support the award; or that there was not sufficient, competent evidence in the record to warrant the award. *Id.* at 126–27. We examine the whole record in judging whether the award is supported by sufficient, competent evidence. *Id.* at 127. We

will find an award by the Commission to be contrary to the overwhelming weight of the evidence only in rare cases. *Doerr v. Teton Transp., Inc.,* 258 S.W.3d 514, 522 (Mo.App. S.D.2008). Further, we do not review issues involving the credibility of witnesses and the weight to be given their testimony. *Id.* Rather, we defer to the Commission's determinations regarding those issues. *Id.*

■ Appellants argue that Employee's average weekly wage should not include per diem payments because the per diem payments were reimbursement for special expenses incurred by Employee as a result of the nature of his employment as a truck driver and not paid as wages for services rendered. Section 287.250.2 [1] provides,

> For purposes of this section, the term "gross wages" includes, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging or similar advance received from the employer, ... Any wages paid to helpers or any money paid by the employer to the employee to cover any special expenses incurred by the employee because of the nature of his employment shall not be included in wages.

The Commission found the deposition testimony of witness Theresa Carr, driver payroll clerk for Employer, to be the "most enlightening, explanatory, and credible." According to Ms. Carr, Employee was compensated with payments for services rendered based upon mileage driven. Additionally, Employee received per diem payments, which are a "federally set amount that a driver is allowed to earn and not be taxed." A truck driver is entitled to a per diem payment if he is on the road for at least twenty-four hours. As explained by Ms. Carr, if Employee earned

$1,372.00 in a pay period based on miles driven and if for the same pay period the non-taxable per diem payments totaled $328.00, then Employer would report taxable earnings of $1,044.00 ($1,372.00 minus $328.00). Ms. Carr described the per diem payments as "just an amount of money that [Employee] earned that we did not tax."

Ms. Carr testified that the per diem payments are a set amount per day regardless of how much the truck driver may actually spend on meals or motel stays. Also, there were no restrictions imposed on Employee concerning the use of the per diem payments; thus, he could use the money as he saw fit. Ms. Carr also explained that the per diem payments were different than reimbursements. Truck drivers were reimbursed for expenses for out-of-pocket costs such as parking, washing a truck, and weighing a truck so long as they turned a receipt in to payroll. In contrast to these reimbursements, Employee was not required to keep records regarding how he spent the per diem payments.

Appellants rely upon *Grimes v. GAB Business Services, Inc.,* 988 S.W.2d 636 (Mo.App. E.D.1999), to support their argument that the per diem payments were special expenses; however, the facts of *Grimes* are distinguishable from those in this case. The employee in *Grimes* was not required to provide the employer with an accounting of how he spent the per diem allowance; however, he conceded that the per diem allowance was to cover his room and board in Florida and that his expenses always exceeded the per diem allowance. *Id.* at 637–38. The employer argued that, under section 287.250.2, the per diem allowance should be considered as a special expense incurred by the em-

1. All references to statutes are to RSMo 2000, unless otherwise specified.

ployee because of the nature of his employment, and therefore, it should not be included in the gross wage computation for rate determination. *Id.* at 638.

The *Grimes* court found that before a per diem allowance can be considered a part of the employee's wages, "there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed." *Id.* at 639. The court noted that the per diem allowance was to cover the employee's work-related expense of room and board in Florida, which would not have been incurred but for his employment. *Id.* at 640. The court then stated,

> [a]lthough we would be inclined to hold that any payment in excess of the actual expenses incurred because of the nature of the employment should be included in the calculation of the average weekly wage, Employee himself testified that his expenses consistently exceeded the amount of the per diem payment. The payments therefore did not result in any real economic gain.

*Id.* at 641. Based on the fact that the payments did not result in any real economic gain to the employee, the court held that the per diem allowance should not have been included in the calculation of the employee's average weekly wage. *Id.*[2]

Likewise, each of the cases cited by Appellants to support their position involves employees who were reimbursed by their employers for special expenses that the employees incurred due to the nature of their employment. Unlike the special expenses in these cases, the per diem payments in the instant case were not reimbursements for expenses incurred by Employee. Contrary to those cases, the testimony of the surviving spouse was that the per diem "more than covered his meal expense" and on some occasions he would pack his lunch and still receive the per diem. Furthermore, Employee's truck had a sleeper on it and he could stay overnight in the sleeper. A fellow truck driver also testified that the per diem more than covered his daily expenses and was an economic benefit to him. Thus, substantial evidence supports the Commission's credibility determination that the per diem was paid as part of Employee's gross wages and did not represent monies to cover any special expenses incurred by Employee because of the nature of his employment. The Commission noted the special expenses, which required a production of receipts, that Employee did incur were treated differently by the employer than the per diems.

That finding is further substantiated by Ms. Carr's testimony that Employee was not required to keep records regarding how he spent the per diem payments. She testified that the per diem was a set amount that Employee received regardless of how much he actually spent on meals or motel stays. Although Appellants essentially argue that "[i]t is incredible the Commission made sense of [Ms Carr's] testimony" and that the testimony of their own witness was not sufficient to satisfy the Employee's burden of establishing the proper compensation rate because she was not aware of the legal relevance of the words "wages" and "earnings," it was for the Commission to determine the credibility of the witnesses. Viewed in the light

2. The phrase "economic gain" is not included in section 287.250.2. Given that we now strictly construe the provisions of the Workers' Compensation Act, it is questionable whether the employee must still show an economic benefit; however, for the purposes of this decision, it is unnecessary to decide that question.

most favorable to the award, Ms. Carr's testimony establishes that, under section 287.250.2, the per diem payments were part of gross wages rather than special expenses.

There was substantial and competent evidence in this case demonstrating that the per diem payments were money payments for services rendered and not special expenses incurred due to the nature of Employee's employment. We, therefore, affirm the Commission's findings and award, which included per diem payments in Employee's average weekly wage and resultant death benefits.

PARRISH, J., BURRELL, P.J., concur.